IN RE the MARRIAGE OF: Bernice LINDSEY,
Petitioner-Appellant,

v.

Charles B. LINDSEY, Respondent.

Court of Appeals

*No. 86–1776. Argued March 24, 1987.—Decided July 15, 1987.*

(Also reported in 412 N.W.2d 132.)

On behalf of the petitioner-appellant there were briefs and oral argument by *Willard G. Neary* of *Burke & Schoetz* of Milwaukee.

On behalf of the respondent there was a brief and oral argument by *Thomas C. Krohn* of *Constantine, Christensen, Krohn & Kerscher, S.C.* of Racine.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. One of the major issues in this appeal is whether a city employee's retirement plan is subject to a domestic relations order which awards a portion of the plan to the nonemployee spouse and permits such spouse to elect a payout option. Because we conclude that the spendthrift provisions of sec. 66.81, Stats., forbid such an order, we affirm the trial court's ruling declining to enter such an order.

Another major issue is whether the trial court has the discretionary authority to order the employee spouse to make a specific payout selection under the retirement plan. We conclude the trial court has such discretionary authority. Since the trial court determined otherwise, we reverse this portion of the judgment and remand for further proceedings.

The remaining challenges to the property division are rejected on waiver grounds. Finally, we affirm the trial court's maintenance award.

Charles and Bernice Lindsey were married on November 8, 1952. At the time of the final hearing Bernice was fifty-five and Charles was fifty-four. No minor children of the marriage existed.

Charles has been employed for the entire length of the marriage as a firefighter. for the city of

Milwaukee. At the time of the final hearing, he was experiencing a host of medical difficulties such that he was on injury duty leave, collecting 80% of his normal salary. He had applied for duty disability which would entitle him to 75% of his normal salary, tax free. He testified that, although presently eligible for retirement, he intends to remain on duty disability until he reaches age fifty-seven when he wishes to retire and receive his pension. Following the entry of judgment in this case, Charles qualified for duty disability.[1]

Bernice has not been employed outside the home during the past thirty-three years. Prior to the marriage, she had been employed as an x-ray technician for a period of two and one-half years. A vocational expert testified that Bernice was qualified to do only entry level or minimum wage work.

The trial court made an equal division of the marital estate. This included a provision that Charles' pension plan, upon retirement, be divided equally between the parties. The trial court awarded Bernice a one-half interest in the plan and permitted her to make her own election as to a payout option. Implicit in the trial court's ruling was the assumption that the city of Milwaukee's Employes' Retirement System would honor this order. Based upon this property division award, the trial court denied maintenance to both parties.

Charles, however, refused to approve the proposed findings of fact, conclusions of law, and judgment which contained these pension-related provisions.

---

[1]This fact was asserted in Bernice's brief and is not in the formal evidentiary record. However, it is not disputed by Charles and was otherwise confirmed without disagreement at oral argument.

Bernice brought a motion seeking to compel Charles to approve the final documents. Charles argued in response that if Bernice took an immediate payout, the rules of the plan required him to take immediate retirement, rather than allowing him to remain on duty disability until he was fifty-seven. The trial court ordered Charles to obtain an opinion of the Milwaukee city attorney on the question and adjourned the case.

At a further hearing on July 21, 1986, Charles submitted a letter from city attorney Grant F. Langley and special deputy city attorney Thomas E. Hayes. The letter, in relevant part, recited:

> Section 66.81, Stats., contains a broad exemption for benefits and allowances of the Employes' Retirement System from court process. In 85 O.C.A. 97, we stated that this statute is inapplicable in alimony and child support matters. *Courtney v. Courtney,* 251 Wis. 443 (1947). The Employes' Retirement System will honor domestic relations orders meeting the requirements of sec. 767.265, Stats.
>
> . . . .
> Section 36.05(7) of the Milwaukee City Charter, 1971 compilation as amended, requires that options be elected by the member. After the selection of an option, amounts payable to beneficiaries other than the member selecting the option would not be subject to the domestic relations order.

Based upon this letter, the trial court determined that its earlier order would not be honored. Therefore, the trial court retained the equal division of the pension, but accorded Charles the right to select the payout option. Bernice appeals.

## DIVISION OF CHARLES' PENSION PLAN

Because this is the first Wisconsin appellate case to discuss an order which seeks to actually award a pension plan (or a portion thereof) to a nonemployee spouse and to accord such spouse payout options under the plan, we believe that some clarification of terms is necessary before we address the issue directly.

At various times in the proceedings in the trial court, the order at issue was referred to as a "qualified domestic relations order." This is technically incorrect.

Private pension plans are governed by the Employee Retirement Security Act of 1974 (ERISA) and applicable provisions of the Internal Revenue Code. *See generally* 29 U.S.C. § 1001 et seq. and 26 U.S.C. § 401 et seq. In order to qualify for employer tax benefits, private pension plans must, among other things, include a "spendthrift" provision to the effect that benefits may not be assigned or alienated. 29 U.S.C. § 1056(d); 26 U.S.C. § 401(a)(13). These spendthrift provisions created uncertainty as to whether they precluded an award of an employee's pension plan to a nonemployee spouse. As a result, Congress enacted the Federal Retirement Equity Act of 1984 (REA)[2] which provided explicit authority for payment of retirement plan benefits to an "alternate payee" (such as a nonemployee spouse, former spouse, children, or other dependents) pursuant to a "qualified domestic relations order" (QDRO). 26 U.S.C. § 414(p)(1)(A). Such an order, properly drafted, retains

---

[2]The REA amended both the labor provisions of ERISA and the tax provisions of the Internal Revenue Code.

the tax benefits resulting from the spendthrift clause, but permits division, award, and distribution of the plan (or a portion thereof) to the alternate payee.

ERISA, however, applies only to private pension plans. *See* 29 U.S.C. § 1003(b)(1). REA, as an amendment to ERISA, does likewise. Therefore, use of the term "QDRO" in the context of this case, which concerns a municipal retirement plan, is technically incorrect. Where such an order is made pursuant to a state domestic relations law, other commentators have denominated it a "domestic relations order" (DRO), a term which we adopt for purposes of this decision.[3] *See* A. Koritzinsky, D. Mahoney & T. Forkin, *Tax Strategies in Divorce* 19–20 (4th ed. 1987).

The record in this case contains a copy of the information booklet which is issued to employees of the city of Milwaukee and which explains the Employes' Retirement System. This booklet does not reveal the presence of a spendthrift clause as a provision of the retirement plan. However, as noted in the city attorney's letter, sec. 66.81, Stats., is a statutory spendthrift provision which applies to the "moneys and assets of any retirement system of any city of the first class" and to "all benefits and allowances and every portion thereof."[4]

---

[3]This may be why the city attorney's letter refers to such court orders as "domestic relations orders."

[4]Section 66.81, Stats., provides:

**Exemption of funds and benefits from taxation, execution and assignment.** All moneys and assets of any retirement system of any city of the first class and all benefits and allowances and every portion thereof, both before and after payment to any beneficiary, granted under any such retirement system shall be exempt from any state, county or municipal tax or from attachment or garnishment process, and shall not be seized, taken, detained or levied upon by virtue of any executions, or any process

We are thus left with a situation where the city of Milwaukee Employes' Retirement System is governed by a statutory spendthrift provision. Therefore, we must determine whether any statutory exception to this spendthrift requirement exists, thereby permitting entry of the DRO sought by Bernice in this case.

Bernice argues that sec. 767.265(1), Stats., represents such authority. This statute provides that certain family court orders constitute an assignment of pension benefits (among other income sources) to the clerk of the court in which the action is filed.[5]

or proceeding whatsoever issued out of or by any court of this state, for the payment and ratification in whole or in part of any debt, claim, damage, demand or judgment against any member of or beneficiary under any such retirement system, and no member of or beneficiary under any such retirement system shall have any right to assign his benefit or allowance, or any part thereof, either by way of mortgage or otherwise; however, this prohibition shall not apply to assignments made for the payment of insurance premiums. The exemption from taxation contained herein shall not apply with respect to any tax on income.

[5]Section 767.265(1), Stats., provides:

**Assignments.** (1) Each order entered on or after February 1, 1978, for child support under s. 767.23 or 767.25, for maintenance payments under s. 767.23 or 767.26, for family support under s. 767.261, for support by a spouse under s. 767.02(1)(f) or for maintenance payments under s. 767.02(1)(g), each court-approved stipulation for child support under s. 767.10 entered into on or after July 2, 1983, and each order for child or spousal support entered under s. 940.27(7) constitutes an assignment of all commissions, earnings, salaries, wages, pension benefits, benefits under ch. 102 or 108 and other money due or to be due in the future to the clerk of the court where the action is filed. The assignment shall be sufficient to meet the maintenance payments, child support payments or family support payments imposed by the court for the support of the spouse or minor children or both and to defray arrearages in payments due at the time the assignment takes effect. Except as provided in sub. (2m), the assignment takes effect if the payer so requests or when the

691

Statutory construction presents a question of law which we review without deference to any ruling by the lower court. *In re K.S.,* 137 Wis. 2d 570, 574, 405 N.W.2d 78, 80 (1987).

Section 767.265(1), Stats., refers only to orders for child, spousal, or family support. Notably absent is any legislative reference to property division orders. The express mention of one matter means that similar matters are excluded. *See State ex rel. Waldeck v. Goedken,* 84 Wis. 2d 408, 420, 267 N.W.2d 362, 367 (1978). Therefore, we conclude that the legislature did not intend sec. 767.265(1) to apply to property division orders.

Next, Bernice turns to secs. 767.01(1) and 767.255, Stats., as support for her argument. Section 767.01(1) provides, in part:

> **Jurisdiction.** (1) The circuit courts have jurisdiction of all actions affecting the family and have authority to do all acts and things necessary and proper in such actions and to carry their orders and judgments into execution as prescribed in this chapter.

Section 767.255 provides, in part:

> **Property division.** Upon every judgment of annulment, divorce or legal separation, ... the court shall divide the property of the parties and divest and transfer the title of any such property accordingly.

These statutes are general in nature. The only specific statute dealing with assignment of pension

requirement of sub. (2) has been satisfied, or, at the discretion of the court or family court commissioner, may take effect immediately.

benefits is sec. 767.265(1), Stats., which, as already noted, does not apply to property division orders. The rules of statutory construction require us to apply the specific statute over the general. *Liles v. Employers Mut. Ins.,* 126 Wis. 2d 492, 504, 377 N.W.2d 214, 220 (Ct. App. 1985). We reject Bernice's argument that secs. 767.01(1) and 767.255, Stats., permit the issuance of a DRO as to Charles' retirement plan.

Next Bernice cites *Savings & Profit Sharing Fund of Sears Employes v. Gago,* 717 F.2d 1038 (7th Cir. 1983), in support of her argument. In *Gago,* the seventh circuit court of appeals held that ERISA did not preempt a Wisconsin family court from entering a DRO as to a private pension plan.[6] (*Gago* preceded the enactment of the REA.) While the case creates an impression that such an order is recognized by Wisconsin law, a reading of the case reveals that the interaction of sec. 767.255, Stats., governing property division, and sec. 767.265, Stats., governing assignments of pension benefits, was not discussed.[7] Moreover, we are not bound by the federal courts' interpretations of state law. *See Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 434–35 n. 11, 405 N.W.2d 354, 369 (Ct. App. 1987).

---

[6]To the same effect, Bernice also cites *Stone v. Stone,* 632 F.2d 740 (9th Cir. 1980).

[7]*Gago* does discuss the differences between property division on the one hand and child support and spousal maintenance on the other. 717 F.2d at 1044. However, this discussion is without any consideration of sec. 767.265(1), Stats., which is the only Wisconsin statute which discusses a court ordered assignment of pension benefits.

Therefore, we affirm the trial court's ruling that it was powerless to issue a DRO as to Charles' governmental retirement plan.[8]

## SELECTION OF PAYOUT OPTION

Having properly concluded that a DRO as to Charles' governmental pension plan was not possible, the trial court proceeded to allow Charles to select from the payout options under the plan. These consist of a monthly payout or a lump sum payment. Bernice, fearing Charles might select the less lucrative plan, appeals. Specifically, she contends that the trial court should have directed Charles to select the monthly payout option.

---

[8]The Wisconsin legislature has not been totally inactive on this question since the passage of the Federal Retirement Equity Act of 1984. 1985 Assembly Bill 689 was a proposal to create a procedure whereby a participant's accumulated rights and benefits under the *Wisconsin Retirement System* could be made the subject of a "qualified domestic relations order." *See* Analysis by the Legislative Reference Bureau to 1985 Assembly Bill 689. The fiscal note to this proposed legislation observed that "[t]he statutes governing the Wisconsin Retirement System (WRS) do not provide a mechanism for dividing rights and benefits under the system to comply with a court order." "The purpose of this bill is to provide a mechanism for the division of WRS benefits pursuant to a qualified domestic relations order issued by a court *in a manner similar to that established by Federal law for private sector pension plans.*" Report of Joint Survey Committee on Retirement Systems for 1985 Assembly Bill 689 (emphasis added). This proposed legislation failed to pass the Assembly.

We cite to this legislative history only for informational purposes since we recognize that nonpassage of a bill is not reliable evidence of legislative intent. *See Sorensen v. Jarvis,* 119 Wis. 2d 627, 634, 350 N.W.2d 108, 112 (1984).

According to the evidence, the present value of the plan under the monthly payout option was $199,000. This would yield a monthly payout of $1560 per month, or $780 per month each to Charles and Bernice under the trial court's fifty/fifty property division ruling. However, under a lump sum payout option the total yield of the plan would be only $40,378, or $20,189 to each of the parties.

We stress that the issue here is not the valuation method selected by the trial court. Indeed, the parties agree that the method utilized by the trial court was proper under the third *Bloomer* option: determine a fixed percentage for the nonemployee spouse of any future payments received by the employee spouse under the plan, payable to the nonemployee spouse as, if, and when paid to the employee. *See Bloomer v. Bloomer,* 84 Wis. 2d 124, 136, 267 N.W.2d 235, 241 (1978). Rather, Bernice complains that the trial court did not go further so as to assure that she would obtain the most lucrative financial option as viewed from her perspective at the time of trial.

Although the trial court rejected Bernice's request that Charles be ordered to select the monthly payout option, the court did order that if Charles did select this option then he must also designate the Protective Survivorship Option which protects Bernice in the event of Charles' death. However, as to the monthly payout option, the trial court expressed the belief that its hands were effectively tied. This ruling was premised upon the court's interpretation of the city attorney's letter that only the employee could select a payout option under the plan.

Assuming this interpretation to be correct, it does not follow that the trial court was without the authority to order Charles to make a particular

election. This would not violate the requirement of the plan that the employee make the selection. Nor does this requirement deprive the court of other means to compensate Bernice in the event Charles should make a payout election detrimental to the marital estate. The trial court retains broad discretion in dividing a pension plan between the parties. *Bloomer,* 84 Wis. 2d at 134, 267 N.W.2d at 240. This discretion goes not only to the valuation of a pension but also to the mechanics of its division. *Arneson v. Arneson,* 120 Wis. 2d 236, 247, 355 N.W.2d 16, 21 (Ct. App. 1984).

Indeed, the trial court's ruling that should Charles select the monthly payout option he must also select the Protective Survivorship Option for Bernice signals that the court believed it had some control over the method and results of the payout. Inexplicably however, the court concluded it had no such authority if Charles should select the lump sum payout.

This was an erroneous view of the law governing a trial court's discretionary authority under *Bloomer* and *Arneson.* An abuse of discretion occurs when a court bases its decision on an erroneous view of the law. *State ex rel. North v. Goetz,* 116 Wis. 2d 239, 245, 342 N.W.2d 747, 750 (Ct. App. 1983). Therefore, we reverse this portion of the judgment and remand for further proceedings in light of these considerations.

We hasten to add, however, that this reversal is premised *only* upon the trial court's belief that it had no discretion on this question. We do not imply that, after remand and further consideration, the court must order Charles to make a specific election. Much of what Bernice asks here involves a good deal of "crystal ball gazing." While she concludes that the monthly payout option is the more lucrative option

696

from her perspective now, it does not necessarily follow that, come retirement time, her position will be the same. While it can be argued that the monthly payout option is the more lucrative financially, other circumstances requiring immediate cash (i.e., an investment opportunity or a needed expensive medical procedure) might well indicate that selection of the lump sum payout is more appropriate. Moreover, the interests of the divorced parties on this question might well be in legitimate conflict—one establishing a convincing need for the monthly payout, the other for the lump sum payment. Indeed, the better practice in most cases might well be for the trial court to decline issuing an order that the employee spouse make a particular election—particularly in those cases where the prospect of retirement is a significant number of years away. Here, of course, Charles' retirement is on the horizon.

This does not mean that the trial court is rendered powerless in a situation where it has not ordered the employee spouse to make a specific election and then a payout option is selected which runs adverse to the interests of the nonemployee spouse. To guard against this eventuality, the court might, for instance, direct that maintenance, if still a factor, will be reexamined at the time the employee spouse makes the election. In short, this situation is so fraught with uncertainty and intangibles that it can only be dealt with on a case-by-case basis.[9]

---

[9]Bernice also contends that Charles' duty disability payments should be subject to property division. *See In re Marriage of Mueller*, 70 Cal. App. 3d 66, 137 Cal. Rptr. 129 (1977).

This issue was not raised below. Although we recognize that Charles had not as yet been granted duty disability status at the time of trial and, as a result, Bernice might argue that she should

Therefore, this remand is solely for the trial court to consider whether it should exercise its discretionary authority to direct Charles to select a specific retirement payout option and to consider what other orders, if any, are appropriate in the event a selection is made which runs counter to Bernice's interests.[10]

## MAINTENANCE

Bernice contends the trial court abused its discretion in its maintenance order. Specifically, she contends that the deviation from the presumptive fifty/fifty rule of *Bahr v. Bahr,* 107 Wis. 2d 72, 318 N.W.2d 391 (1982), was not adequately explained by the trial court. The court fixed maintenance at 30% of Charles' duty disability payments or gross wages, whichever applied. This resulted in a maintenance payment of $545 per month.

Maintenance is addressed to the discretion of the trial court. *Trattles v. Trattles,* 126 Wis. 2d 219, 228, 376 N.W.2d 379, 384 (Ct. App. 1985). When a couple

not be charged with waiver, we note this did not deter Bernice from addressing this contingency on the maintenance issue. Bernice made no claim to the duty disability payments on the property division side of the ledger. Therefore, we choose not to review this issue in this appeal. *See Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 416, 405 N.W.2d 354, 362 (Ct. App. 1987).

We note, however, that our remand on other aspects of the property division issue will present an opportunity for Bernice to ask the trial court, in its discretion, to consider this question and the effect, if any, of *Duffy v. Duffy,* 132 Wis. 2d 340, 392 N.W.2d 115 (1986).

[10]Charles also alleges error in the trial court's property division of the pension. He has not, however, filed a cross-appeal and we do not address this claim. *See* sec. 809.10(2)(b), Stats.

has been married many years and achieves increased earning, it is reasonable to consider an equal division of total income as a starting point in determining maintenance. *Bahr,* 107 Wis. 2d at 84–85, 318 N.W.2d at 398; *LaRocque v. LaRocque,* 139 Wis. 2d 23, 39, 406 N.W.2d 736, 742 (1987). This percentage may be adjusted following reasoned consideration of the statutorily enumerated maintenance factors; this percentage is not the determinative factor which controls the ultimate award; rather it is the equitableness of the result reached that must stand the test of fairness on review. *LaRocque* at 39, 406 N.W.2d at 742.

Here, the trial court addressed maintenance at two hearings—the trial when no maintenance was awarded to either party because the court believed Bernice could exercise her payout options under the retirement plan and at the post-trial proceeding when maintenance was awarded in light of the adjustment to the property division when the court realized the DRO would not be honored.

Despite the disparity between the parties' work history, the trial court found that Bernice, healthwise, was able to work while Charles' ability was minimal at best. The trial court stated, "She is more capable of generating income at this time by way of employment than he is." It does not appear that Bernice disputed Charles' physical problems and disability claims. Both parties approached the maintenance question on the premise that duty disability status to Charles would likely be forthcoming.

The trial court indicated its awareness of the *Bahr* rule when it observed, "I don't think it is appropriate to award her half as you suggest because she is capable of going out and earning some money." Moreover, the trial court, with the acquiescence of

Bernice's counsel, stated that it had to work from a percentage figure rather than a dollar figure because the amount of Charles' disability award had not as yet been ascertained.

These reasons, as articulated by the trial court, constitute the required reasoned consideration of the statutory factors which were *relevant* to a departure from the *Bahr* rule. A trial court is required to consider those statutory factors which are relevant to a maintenance determination. *Trattles,* 126 Wis. 2d at 229, 376 N.W.2d at 384. The maintenance order, in our judgment, withstands the test of fairness, *LaRocque,* 139 Wis. 2d at 39, 406 N.W.2d at 742, and we affirm the order.[11]

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded for further proceedings.

---

[11]The trial court is free to reassess its maintenance award upon remand in light of any modification it may choose to make as to the property division. *See Arneson v. Arneson,* 120 Wis. 2d 236, 255, 355 N.W.2d 16, 25 (Ct. App. 1984).