UNIVEST CORPORATION, Plaintiff-Respondent-Cross Appellant,

v.

GENERAL SPLIT CORPORATION, Defendant-Appellant-Cross Respondent-Petitioner. [Case No. 85-1216.]

UNIVEST CORPORATION, Plaintiff-Respondent,

v.

GENERAL SPLIT CORPORATION, Defendant-Appellant-Petitioner. [Case No. 86-1373.]

Supreme Court

*Nos. 85-1216, 86-1373. Argued September 6, 1988.—Decided February 10, 1989.*

(Also reported in 435 N.W.2d 234.)

For the petitioner there were briefs by *Irvin B. Charne, Ronald S. Jacobs, F. Thomas Olson* and *Charne, Glassner, Tehan, Clancy & Taitelman, S.C.,* Milwaukee, and oral argument by *Irvin B. Charne.*

For the plaintiff there was a brief by *Timothy J. McDermott, K. Michael Cooley* and *Whyte & Hirschboeck, S.C.,* Milwaukee, and oral argument by *Mr. Cooley.*

WILLIAM A. BABLITCH, J. This eviction action has been appealed to the court of appeals three times. General Split Corporation (General Split) seeks review of the second of three court of appeals' decisions, dated March 14, 1986, from which it did not initially seek review from this court. General Split also seeks review from the third and most recent court of appeals' decision, dated April 29, 1987, which summarily affirmed a trial court determination that double rental value damages for failure of a tenant to vacate, under sec. 704.27, Stats., included certain utility payments incurred during the holdover period.

We review two issues. First, whether this court in granting a petition for review may consider issues addressed in earlier decisions of the court of appeals in the same case, notwithstanding that review of the earlier decision was not sought. We conclude that although General Split did not petition for review within 30 days of the March 14, 1986, decision, we are not precluded from reviewing the issues determined in that appeal. A timely petition for review of the April 29, 1987, decision was made, bringing the entire record before us. Once the case is before us, it is within our discretion to review any substantial and compelling issue which the case presents.

The second issue is whether the term "rental value" under sec. 704.27 Stats., includes certain utility payments incurred during the holdover period. We conclude that the phrase "rental value" as used in sec. 704.27 is limited to obligations undertaken by the tenant as part of the rental agreement which would necessarily be expected to result in damages because of a holdover, regardless of whether or not the tenant uses the premises. Because General Split was obligated under the lease to purchase utilities only if it actually used such services, the obligation was not of the type which would necessarily be expected to result in damages as the result of a holdover, and was therefore improperly included in the double rental value award. Accordingly, we reverse the damage award and remand for a determination of the correct amount of damages to be assessed.

The underlying history of the litigation is long and involved. The facts necessary for resolution of this appeal are as follows.

General Split is in the leather tanning business, and had two leases ("the 1964 lease" and "the 1969 lease") on two separate properties owned by Univest Corporation (Univest). By virtue of various extensions and new agreements, both leases were set to terminate on June 30, 1984.

In connection with its operations as a tannery, General Split required electricity, water, sewer, and process steam at both locations. The leases contained clauses providing that the lessor agreed to furnish and the lessee agreed to purchase from the lessor all of its requirements of electric current, water, gas, and steam.

General Split also required heat steam at the 1964 leased premises to keep certain tanning oils from congealing. The 1964 lease required Univest to furnish heat steam at its own expense during regular business hours, referred to by the parties as "on hours." General Split, however, provided its own heat for the 1969 leased premises, using heating equipment which it installed on that property.

In November of 1982, Univest sent letters to General Split terminating both leases, and subsequently brought an eviction action. General Split answered, asserting two counterclaims and nine affirmative defenses.

After one appeal to the court of appeals, the trial court eventually awarded judgment of eviction to Univest. The court refused to consider parol evidence offered by General Split in support of its affirmative defenses. The court found that the entire agreement between the parties was contained in the leases, and the parties intended that the leases embodied their entire agreement. Thus, the court concluded that the parol evidence rule barred the consideration of the evidence

allegedly explaining or altering the contractual obligations of the parties.

The court then awarded Univest a portion of the damages claimed, but rejected Univest's arguments that double rental value damages were applicable under sec. 704.27, Stats., for the period of the holdover. The trial court also denied prejudgment interest, concluding that the claim was not liquidated.

General Split appealed from that judgment and Univest cross-appealed, resulting in the court of appeals' decision dated March 14, 1986. The judgment of eviction was affirmed. The court of appeals concluded that the trial court properly refused to consider the parol evidence allegedly in support of General Split's affirmative defenses. Regarding the cross-appeal, the court concluded that the trial court erred in failing to award Univest double rental damages under sec. 704.27, Stats. The court also concluded that Univest was entitled to prejudgment interest. The matter was therefore again remanded to the trial court for a determination of the amount of double rental value damages and prejudgment interest to which Univest was entitled.

Significantly, General Split did not seek review from the March 14, 1986, decision.

On the second remand, the trial court heard further arguments and entered a judgment in Univest's favor in the amount of $1,604,079.46. This judgment included $1,313,664.48 in double rental value damages. The court determined that General Split had remained in possession of both premises until March 31, 1985. However, its possession after June 30, 1984, was with the consent of Univest and pursuant to an agreement between the parties. Therefore, with regard to the 1964 lease, the trial court found that General Split improperly remained as a holdover tenant from November 2,

1982, until June 30, 1984. With regard to the 1969 lease, the trial court found that General Split was a holdover tenant from November 18, 1982, until June 30, 1984.

In assessing double damages the trial court determined that the total "rental value" for the two properties during the holdover periods amounted to $1,315,257.30, of which $152,149.46 was attributable to rent and real estate taxes. The balance of $1,163,107.92 was attributable to process steam, electricity, water, and sewer services. The trial court then doubled the "rental value" for a total of $2,630,514.60. The court credited General Split $1,316,850.10, which General Split had timely paid Univest during the holdover periods for rent, real estate taxes, process steam, electricity, water, and sewer. The difference of $1,313,664.48 was the amount the trial court included as double rental value damages in the judgment.

General Split appealed for the third time to the court of appeals, resulting in the April 29, 1987, decision. General Split argued that the term "rental value" in sec. 704.27, Stats., did not include the amounts awarded for electricity, water, sewer, and steam. General Split also reargued the parol evidence issue and various other issues decided in the first two appeals.

The court of appeals concluded on this third appeal that sec. 704.27, Stats., was unambiguous, and that the term "rental value" included *any* of the tenant's obligations under the lease. Although the court noted that General Split paid only for the utility services actually used, without correlation to the amount of space leased, it determined that the agreements to pay Univest for the items were nevertheless obligations as that term is used in the statute. The amount of damages was therefore upheld.

35

The court of appeals rejected General Split's request that it review issues determined in the previous appeals. The court concluded that these matters had become the "law of the case," and were thus binding precedent to be followed in all succeeding stages of the same litigation. The court stated that General Split had presented no compelling reason for departing from that doctrine or for reconsidering their prior decisions.

General Split petitioned this court for review of both the April 29, 1987, decision as well as the March 14, 1986, decision. In granting the petition, we specifically limited the issues to whether the petition for review was timely regarding the March 14, 1986, decision; and the meaning of the phrase "rental value" under sec. 704.27, Stats.

The resolution of these issues involves the interpretation of statutes, which is a question of law. *DeMars v. LaPour,* 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985). We need not defer to the trial court or the court of appeals when deciding such questions. *Id.*

I.

We first determine whether this court, in granting a petition for review, may consider issues addressed in earlier decisions of the court of appeals in the same case, notwithstanding that review of the earlier decision was not sought. The March 14, 1986, decision, the "earlier" decision, was adverse to General Split. The decision was also the final decision in that it disposed of the legal issues presented in the court of appeals. *See In Interest of A.R.,* 85 Wis. 2d 444, 446, 270 N.W.2d 581 (1978). The decision was therefore reviewable by this court under secs. 808.10 and (Rule) 809.62, Stats.

Univest argues that because General Split did not seek review of the March 14, 1986, decision within 30 days, as required by sec. 808.10, Stats., this court now lacks jurisdiction to consider the issues decided in that appeal. We disagree.

In its March 14, 1986, decision, the court of appeals concluded that the trial court properly refused to consider the parol evidence allegedly in support of General Split's affirmative defenses. The court of appeals further held that the trial court erred in failing to award Univest double damages under sec. 704.27, Stats., and that Univest was entitled to prejudgment interest. The matter was therefore again remanded to the trial court, and, after proceedings in the trial court, was again appealed to the court of appeals. Although General Split did not seek review within 30 days of the March 14, 1986, decision of the court of appeals, a timely petition was made to review the April 29, 1987, decision of the court of appeals. That petition properly brought the entire record before us. *See State v. Wyss,* 124 Wis. 2d 681, 690-91, 370 N.W.2d 745 (1985).

██

Once a petition for review is properly before us, sec. (Rule) 809.62(6), Stats., provides that "[t]he supreme court may grant the petition upon such conditions as it considers appropriate,...." This section is a broad grant of discretionary power to this court with respect to petitions for review that are granted. We conclude that contained within this broad grant of discretionary authority is the authority of this court to consider issues addressed in earlier decisions of the court of appeals in the same case, notwithstanding that review of the earlier decision was not sought.

This approach is consistent with that used by the United States Supreme Court with respect to requests

for writs of certiorari to review decisions of lower federal courts. In R. Stern, E. Gressman, & S. Shapiro, *Supreme Court Practice* 41 (6 Ed. 1986), the authors state: "(t)he Court on certiorari to review a final decree can reach back and correct errors in the interlocutory proceedings below, even though no attempt was made to secure review of the interlocutory decree or even though such an attempt was made without success." (Citations omitted.)

This approach is also consistent with the goals of judicial economy and the avoidance of unnecessary and multiple proceedings. For example, in this case the court of appeals remanded the case to the trial court for additional fact-finding. Had the decision of the trial court upon further proceedings been other than it was, there might well have been no need for General Split's subsequent appeal and, ultimately, its petition for review to this court.

■

The court of appeals correctly observed the long-standing rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal. *See State v. Brady,* 130 Wis. 2d 443, 448, 388 N.W.2d 151 (1985) (quoting *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir. 1967)).

The March 14, 1986, decision of the court of appeals decided every legal issue presented by General Split on that appeal. In the absence of a timely petition for review, the legal issues decided by that decision became the law of the case to be followed by the trial court on the remand and by the court of appeals on the third appeal.

However, the law of the case doctrine is not a rule to which this court is bound by any legislative enact-

ment, nor is it a rule to be inexorably followed in every case. In *Brady,* 130 Wis. 2d, we noted that we have departed from the earlier tradition of rigid adherence to the law of the case doctrine, and may disregard the doctrine in certain circumstances when "'cogent, substantial, and proper reasons exist.'" *Id.* at 447, (citing *McGovern v. Eckhart,* 200 Wis. 64, 78, 227 N.W. 300, 305 (1929)).

The standards set forth in sec. (Rule) 809.62, Stats., as guidelines for the exercise of our discretion reflect such reasons. This statute requires the petitioner to state the special and important reasons for review as exemplified in the criteria, or in the absence of one of the criteria, state other substantial and compelling reasons for review. *See* sec. (Rule) 809.62, Judicial Council Committee's Note, 1981. We therefore hold that once the case is before us, it is within our discretion under these standards to review any substantial and compelling issue which the case presents, regardless of whether a prior decision established the law of the case. *See Brady,* 130 Wis. 2d at 448.

Although we conclude that we have the power to examine such questions, in accepting this petition for review we specifically limited the issues for review to the two issues enunciated above, and thereby implicitly considered the legal issues determined in the March 14, 1986, decision inappropriate for further review. Accordingly, we do not review the issue regarding the parol evidence decided in the March 14, 1986, decision.

## II.

The second question, resulting from the April 29, 1987, decision, involves an issue of first impression regarding the interpretation of the phrase "rental value" under sec. 704.27, Stats. Univest insists the

statute unambiguously indicates that rental value includes the money equivalent of *any* obligation undertaken by the tenant as a part of the rental agreement, including use-based utility obligations. Conversely, General Split argues that not all obligations are included in the definition of rental value. Obligations such as rent, taxes, insurance premiums, and certain repairs are presumed to result from a holdover, and represent obligations which the tenant must pay whether it uses the premises or not. However, General Split contends that charges for such items as utilities and steam used in manufacturing, which the tenant chooses to incur and thus do not necessarily result from a holdover, are not includable in the calculation of rental value within the meaning of the statute.

Our first task in the interpretation of a statute is to look to the statutory language itself. Section 704.27, Stats., provides:

> **704.27 Damages for failure of tenant to vacate at end of lease or after notice.**
> If a tenant remains in possession without consent of his landlord after expiration of a lease or termination of a tenancy by notice given by either the landlord or the tenant, or after termination by valid agreement of the parties, the landlord may recover from the tenant damages suffered by the landlord because of the failure of the tenant to vacate within the time required. In the absence of proof of greater damages, the landlord may recover as minimum damages twice the rental value apportioned on a daily basis for the time the tenant remains in possession. As used in this section, rental value means the amount for which the premises might reasonably have been rented, but not less than the amount actually paid or payable

40

by the tenant for the prior rental period, and includes the money equivalent of any obligations undertaken by the tenant as part of the rental agreement, such as payment of taxes, insurance and repairs.

In defining "rental value," the statute attempts to delineate the types of obligations, in addition to the rent itself, that are subject to double damages: "such as payment of taxes, insurance and repairs." Had the legislature intended that any and all obligations undertaken by the tenant as part of the rental agreement be subject to double damages, it would not have been necessary to include examples of obligations that are included as rental value, "such as payment of taxes, insurance and repairs." Thus, we conclude that these examples indicate a legislative intent to circumscribe the type of obligation subject to doubling.

The question becomes what types of obligations are encompassed within the term's ambit. The answer lies partly in the 1969 Committee Comment to sec. 704.27, Stats., which provides in part:

> The proposed statute allows recovery of twice rental value *only as a means of establishing minimum damages.* In many cases the landlord cannot as a practical matter prove loss of a rental opportunity and is burdened with the cost and inconvenience of a lawsuit to recover his damages and in some cases a second lawsuit to recover possession. *The proposed statute limits the double recovery, however, to a daily apportionment of the rent. The landlord cannot under the proposed statute recover both special damages and double the rental value, as under present s. 234.06.* (Emphasis added.)[1]

---

[1] Section 704.27, Stats., was enacted by the Laws of 1969, ch. 284. The legislation was proposed as Assembly Bill 654, and the

Thus, the Committee Comment is evidence of a legislative intent to distinguish what was then "special damages" from that which was subject to doubling, i.e., "rental value."

At the time sec. 704.27, Stats., was passed, this court on past occasions had noted the distinction between "special" and "general" damages in cases of breach of contract. *See, e.g., Hammond v. Sandwich Mfg. Co.*, 146 Wis. 485, 468–88, 131 N.W. 1097 (1911); *Archer v. Milwaukee Auto Engine & Supply Co.*, 144 Wis. 2d 476, 478, 129 N.W. 598 (1911). General damages were traditionally said to be those which were expected to naturally and necessarily result from the breach. They were damages which would ordinarily result and thus were said to be implied in law. Special damages were defined as those occurring as a natural consequence of the breach, but not so necessarily foreseeable as to be implied in law. They required proof of foreseeability under the particular circumstances of the case. *See* 22 Am. Jur. 2d, *Damages,* secs. 36–40, pp. 62–64 (1988); Restatement of Contracts, sec. 330, p. 509 (1932).

We therefore conclude that the term "rental value" found in sec. 704.27, Stats., considered in light of the Committee Comment, indicates an intent to limit "rental value" to those obligations which the tenant would be required to pay in the event of a holdover regardless of whether the tenant uses the premises or not. It is those obligations that naturally and necessarily result in damages as a result of the failure to vacate

body of the bill contains notes authored by the Wisconsin State Bar to explain its contents. These notes appear as a Committee Comment in the text of Assembly Bill 654, and the language was enacted in identical form in the Act.

within the required time. Thus, rental value may include obligations such as real estate taxes, insurance premiums, and certain repairs if those obligations are provided for in the lease separately from the base rent. However, "obligations" which have no direct relationship whatsoever to damages necessarily expected to result from a holdover cannot be considered as rental value.

Applying this distinction to the present controversy, Univest's claim for double utility and steam payments must fail. The obligation at issue, to purchase utilities from a certain source, is the type of obligation that is dependent on use, and is not necessarily expected to flow from a holdover. As noted, the 1964 and 1969 leases did not require General Split to use any specific amount of utilities. The amounts paid by General Split for processed steam, electricity, water, and sewer were sums that General Split was "obligated" to pay only if the services were actually used. In fact, had General Split shut down its operations, it would not have used any utilities at all. Therefore, these obligations would not necessarily result in damages from a holdover, and were improperly included as rental value.

Univest insists, however, that had it not set forth General Split's utility obligations in a separate provision from the base rent, then "such an amount best approximating the value of the utility services would have been included in the base rent amount and there would be no question that it would be included in the double rental value calculation." Brief for Univest at 33–34. We are unpersuaded. Aside from the possibility that General Split may have refused to enter into a lease in which an "approximate value of utility services" was included in the base rent, the fact is that the

present lease contains no such provision. As mentioned, General Split was not obligated to use any specific amounts of utilities or steam. General Split was obligated to pay for only such services as it actually used. Had General Split shut down its operations shortly after entering into the lease, Univest could have claimed neither a breach nor any damages as a result. Therefore, the obligations cannot be considered as comprising the rental value of the premises.

Indeed, we consider it somewhat fortuitous that General Split's obligation to purchase steam and utilities through Univest was contained in the leases, rather than in a requirements contract or a contract for purchase and sale. The relationship between Univest and General Split regarding the utilities may best be likened to that of vendor and purchaser. Univest is placed in a position tantamount to a vendor of services; General Split is placed in a position tantamount to a purchaser of services. We conclude that this is not the type of obligation envisioned by the legislature as comprising rental value under sec. 704.27, Stats.

We therefore hold that "rental value" under sec. 704.27, Stats., is limited to obligations undertaken by the tenant as part of the rental agreement which would necessarily be expected to result in damages because of a holdover, regardless of whether or not the tenant uses the premises.

For the reasons set forth above, we reverse the double rental value award and remand for a calculation of the correct amount of damages to be assessed.

*By the Court.*—The decision of the court of appeals is reversed and remanded.