Mary K. SULZER, Plaintiff-Respondent-Cross-Appellant-Petitioner,

v.

Mary Susan DIEDRICH, Defendant-Appellant-Cross-Respondent.

Supreme Court

*No. 02–0036. Oral argument May 27, 2003.—Decided July 3, 2003.*

2003 WI 90

(Also reported in 664 N.W.2d 641.)

For the plaintiff-respondent-cross-appellant-petitioner there were briefs by *C. Michael Hausman, Steven W. Jelenchick,* and *C. Michael Hausman & Associates, Ltd.,* Delafield, and oral argument by *Steven W. Jelenchick* and *C. Michael Hausman.*

For the defendant-appellant-cross-respondent there was a brief by *John K. Brendel* and *Brendel Law Offices,* Brookfield, and oral argument by *John K. Brendel.*

¶ 1. ANN WALSH BRADLEY, J. The petitioner,

Mary Sulzer (Sulzer), seeks review of a published court of appeals decision that reversed an order of the circuit court.[1] The circuit court order vacated its initial order imposing a constructive trust. Instead, it awarded Sulzer a money judgment in connection with the division of the retirement accounts of her former husband, Fred Diedrich (Fred), which were to be divided equally at the time of their divorce in 1989. Upon Fred's death, the accounts were subsequently converted to survivorship benefits with his second wife, the respondent Mary Diedrich (Diedrich), named as the beneficiary. The court of appeals concluded that the circuit court erred when it vacated its initial order imposing a constructive trust on Sulzer's portion of these funds, and instead awarded a money judgment.

¶ 2.　In analyzing the amount that should be subject to the constructive trust, the court of appeals determined that it should include the investment experience of Sulzer's portion of the accounts between the 1989 divorce and the date of Fred's death in 1995, but should not include the investment experience after Fred's death.[2] *Sulzer v. Diedrich,* 2002 WI App 278, ¶ 2, 258 Wis. 2d 684, 654 N.W.2d 67. Sulzer agrees that a constructive trust should be imposed, but seeks review of the court of appeals' determination that the construc-

---

[1] *Sulzer v. Diedrich,* 2002 WI App 278, 258 Wis. 2d 684, 654 N.W.2d 67 (reversing an order of the circuit court for Waukesha County, Donald J. Hassin, Jr., Judge).

[2] We use the term "investment experience" to refer to the actual gains and losses on Sulzer's portion of the retirement accounts. We note that the circuit court and the court of appeals variously referred to this concept as "earnings" and "interest and appreciation."

tive trust should not include the investment experience of her portion of the retirement accounts after Fred's death.

¶ 3. While we agree that the imposition of a constructive trust is warranted in this case, we conclude that the constructive trust should include the investment experience on Sulzer's portion of the retirement accounts through the date of payment to Sulzer. We therefore modify the decision of the court of appeals, affirm the decision as modified, and remand to the circuit court for further proceedings consistent with this opinion.

¶ 4. The retirement accounts at issue in this case are Fred's Wisconsin Retirement System (WRS) account and his deferred compensation account administered by the Copeland Companies (Copeland) at the time of the divorce.[3] During Sulzer and Fred's divorce proceedings, the parties entered into an oral stipulation. The following exchange took place regarding the pension benefits:

> ATTORNEY D'ANGELO: . . . In addition, the parties have agreed to divide equally all of the respondent's interests through the Wisconsin Retirement System with the value established as of today's date, and all of the respondent's interest in his deferred compensation program through the State of Wisconsin.

> THE COURT: So, those two retirement plans or investment plans are going to be divided equally by a qualified domestic relation order.

---

[3] At the time of the divorce, Fred's deferred compensation plan was managed by the Copeland Companies. Apparently, the company managing the plan has since changed. However, for clarity, we refer to the account holding the deferred compensation benefits as the Copeland account, as did the circuit court and the court of appeals.

500

ATTORNEY D'ANGELO: On the deferred compensation but the State of Wisconsin uses a slightly different program for division, but that is the intent of it.

. . . .

THE COURT: . . . We are going to use a qualified domestic relation order for the deferred compensation plan, and we are going to use another approach, which is going to end up with her owning half of his present value as of today in his retirement plan. Okay. Not exactly a domestic relation order, it's another kind of procedure used by the State whereby she ends up receiving half of it. . . .

¶ 5. In conformity with the oral stipulation, the judgment of divorce, entered on December 12, 1989, contained a "Property Division" section that provided:

The parties will divide equally all of respondent's interest in the retirement, pension, profit sharing, or deferred compensation benefits through the Wisconsin Retirement System or the State of Wisconsin. The deferred compensation plan of the respondent is presently administered by the Copeland Companies and his retirement benefits are with the State of Wisconsin Retirement System. It is the parties' intent to have these benefits divided as to their balance on the date of the divorce trial on September 6, 1989, by a Qualified Domestic Relations Order, or an order of the Court having a similar effect.

¶ 6. After the divorce, Sulzer obtained various circuit court orders in her efforts to cause the division of the retirement accounts as provided in the 1989 divorce judgment. In August 1990, she obtained an Order for Division of Benefits directing the Wisconsin Department of Employee Trust Funds to issue Fred's benefit checks to the Clerk of Courts of Waukesha

County for division of payments pursuant to the divorce judgment. The Copeland plan administrators rejected this order.

¶ 7. A Domestic Relations Order was then entered in February 1993 as to the Copeland account, ordering Fred to, among other things, designate Sulzer as the beneficiary under the account as to the amount provided in the divorce judgment. Fred failed to name Sulzer as the beneficiary as required by the order.

¶ 8. In March 1995, an Order to Divide Wisconsin Retirement System Benefits was entered as to the WRS account. The order, which was intended to be a Qualified Domestic Relations Order (QDRO), awarded Sulzer 50% of the value of the WRS account. However, WRS considered the QDRO to be unenforceable because, at that time, the QDRO exception to the WRS restrictions did not apply to marriages terminated prior to April 28, 1990.

¶ 9. Fred married Diedrich on May 9, 1992. Shortly thereafter, on May 22, 1992, he designated Diedrich as the beneficiary of the WRS and Copeland accounts.

¶ 10. Fred died in February 1995. Soon after his death, Sulzer requested her portion of the retirement accounts from WRS and Copeland, as provided in the divorce judgment. Both requests were denied because Sulzer was not designated as the beneficiary on the accounts.

¶ 11. In May 1998, the law was changed to permit the division of WRS retirement accounts in accordance with QDRO agreements reached pursuant to divorce judgments granted on and prior to April 27, 1990. In response to the change in the law, Sulzer requested that WRS implement the QDRO. WRS responded in February 1999, setting forth its reasons for refusing to honor

the QDRO. WRS stated that it would not honor the QDRO in this case because Fred died prior to the change in the law and his benefits had already been paid to Diedrich as the designated beneficiary.

¶ 12. Sulzer commenced this action in December 1996, seeking a constructive trust against Diedrich, and any other appropriate just and equitable relief. After numerous delays, postponements, and adjournments, the circuit court imposed a constructive trust on the retirement accounts in September 2000. At a hearing to determine Sulzer's monetary interest in the retirement accounts, the circuit court, for reasons not fully explained on the record, vacated the constructive trust and awarded Sulzer a monetary judgment in the amount of $169,482. This is the amount that was in Sulzer's portion of the retirement accounts as of the date of divorce together with the investment experience on that portion up to the date of the hearing, as calculated by Sulzer's expert.

¶ 13. Diedrich appealed the circuit court's judgment and Sulzer cross-appealed. The court of appeals concluded that the circuit court erred in vacating the constructive trust and awarding a money judgment. *Sulzer v. Diedrich,* 2002 WI App 278, ¶ 2, 258 Wis. 2d 684, 654 N.W.2d 67. It determined that the circumstances warranted the imposition of a constructive trust. *Id.*

¶ 14. The court also concluded that Sulzer was not entitled to appreciation after Fred's death because the funds had been converted from retirement benefits to survivorship benefits. *Id.,* ¶ 17. Further, noting that the action sounded in equity, it concluded that Sulzer was not entitled to interest because of her numerous requests for postponements and because Diedrich did not wrongfully retain the use of Sulzer's money. *Id.,*

¶ 18. The court of appeals remanded the matter to the circuit court for imposition of the constructive trust. *Id.,* ¶ 19.

## II

¶ 15. In this case, we must determine whether the use of a constructive trust is warranted to give effect to terms contained in a divorce judgment. If it is, we must then address the extent to which the investment experience of Sulzer's portion of the retirement accounts should be included in the constructive trust.

¶ 16. The question of whether to impose a constructive trust sounds in equity. *Singer v. Jones,* 173 Wis. 2d 191, 194, 496 N.W.2d 156 (Ct. App. 1992). We apply a two-tiered standard of review in this type of case. *Id.* As to the legal issues, such as the construction of the divorce judgment, we apply a *de novo* standard. *Id.* As to the ultimate decision whether to grant the equitable relief of a constructive trust, we apply a discretionary standard. *Id.*

¶ 17. Our application of the discretionary standard of review to the ultimate decision of whether to impose a constructive trust is complicated by the procedural history of this case. Sulzer's complaint requested that the circuit court impose a constructive trust and the circuit court initially did so. However, it later vacated the constructive trust and ordered a money judgment. The court of appeals noted that the circuit court did not set forth on the record its reasoning for ordering the money judgment. *Sulzer,* 258 Wis. 2d 684, ¶ 8. It assumed that the circuit court did so on the grounds of unjust enrichment. *Id.*

¶ 18. The court of appeals then determined that one of the elements necessary to establish unjust en-

richment, namely the requirement that a benefit be conferred upon the defendant by the plaintiff, did not exist here. *Id.,* ¶ 11. It therefore concluded that the elements of unjustment enrichment had not been met and thus, as a matter of law, a money judgment was erroneously granted. *Id.* Accordingly, it discussed and reaffirmed the court's intial order imposing a constructive trust.

¶ 19. We first discuss the circumstances in which the imposition of a constructive trust is warranted and conclude that the court of appeals correctly affirmed the use of a constructive trust in this case.[4] We then address the appropriate period during which the investment experience of Sulzer's portion of the retirement accounts should be included in the calculation and conclude that this period should extend from the date of the divorce until the date that the funds are paid to Sulzer.

---

[4] We address the constructive trust issue in this case even though Diedrich did not file a petition for cross-review requesting review of this issue. As a general rule, "a party may not raise a new issue in this court that will require a modification of the decision of the court of appeals without filing a petition for review or cross review." *Ranes v. American Family Mut. Ins. Co.,* 219 Wis. 2d 49, 54 n.4, 580 N.W.2d 197 (1998). Here, the issue of whether the facts warranted the imposition of a constructive trust was not properly raised. Nevertheless, we exercise our discretionary power to review this issue. A petition for review of a court of appeals decision brings the entire record before us. *Univest Corp. v. General Split Corp.,* 148 Wis. 2d 29, 32, 435 N.W.2d 234 (1989). Once a case is before us, it is within our discretion to review any issue which the case presents. *See id.*

¶ 20. A constructive trust is an equitable device used to prevent unjust enrichment which arises when a party receives a benefit the retention of which is unjust to another party. *Wilharms v. Wilharms,* 93 Wis. 2d 671, 678–79, 287 N.W.2d 779 (1980). However, unjust enrichment alone is not sufficient to warrant imposing a constructive trust. Rather, a constructive trust will be imposed only when the party who received the property obtained it by specific means as enumerated in our case law, one of such means being the receipt of the property by mistake:

> A constructive trust will be imposed only in limited circumstances. The legal title must be held by someone who in equity and good conscience should not be entitled to beneficial enjoyment. Title must also have been obtained by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct.

*Id.* (citations omitted).

¶ 21. The court of appeals concluded that the facts of this case warranted the imposition of a constructive trust. *Sulzer,* 258 Wis. 2d 684, ¶ 15. It noted that the intent of Sulzer and Fred was to divide the WRS and Copeland accounts equally. *Id.* Further, it observed that Diedrich obtained title to these accounts only because Fred, whether by mistake or otherwise, incorrectly named Diedrich as the sole beneficiary on the accounts. *Id.* As a result, according to the court of appeals, a portion of the funds allocated to Sulzer in the divorce judgment were being wrongfully held by

Diedrich, who in equity and good conscience should not be entitled to their beneficial enjoyment. *Id.*

¶ 22. We agree with the court of appeals and the circuit court that the divorce judgment, both written and oral pronouncements, clearly expressed Sulzer's and Fred's intent to divide equally the retirement accounts as of the date of the divorce. *Id.* To allow Diedrich to retain the funds attributable to Sulzer's portion would thwart the intent of the parties and would be unjust to Sulzer.

¶ 23. Diedrich argues that the imposition of a constructive trust against her is not appropriate. She notes that there is nothing in the record to indicate that she did anything wrongful. However, as observed in *Wilharms,* while wrongful conduct can serve as the basis for a constructive trust, it is not necessary that the person on whom a constructive trust is imposed have committed any wrongdoing. *Wilharms,* 93 Wis. 2d at 678–79; *see also Singer,* 173 Wis. 2d at 198 n.2. A constructive trust may be warranted in circumstances in which a person obtains property as the result of a mistake, with that person not committing any wrong. *Wilharms,* 93 Wis. 2d at 679–80.

¶ 24. By mistake or otherwise, Fred incorrectly named Diedrich as the sole beneficiary. In addition, at the time of their divorce, Sulzer and Fred were under a mistaken belief that Fred had the ability to convey one-half of the retirement accounts to Sulzer. In *Wilharms,* we noted that mistake as a grounds for the imposition of a constructive trust "may also refer to a mistake arising when property is not conveyed which the grantor intended to convey." *Wilharms,* 93 Wis. 2d at 680 n.2.

¶ 25. At the time of the divorce proceedings, Sulzer and Fred were operating under the assumption that it would be possible to divide the retirement accounts equally. The divorce judgment indicates that the parties intended that Fred assign one-half of each of his retirement accounts to Sulzer. As it turned out, the then existing law did not permit Fred to make such an assignment.[5] This mutual mistake in 1989 and the naming of Diedrich as the beneficiary of the accounts in 1992, together with the unjust enrichment that results from Diedrich's retention of Sulzer's portion of the accounts, are grounds for the imposition of a constructive trust.

¶ 26. Diedrich questions whether a constructive trust can be imposed in this case because, at the time of the divorce judgment, the law did not permit Fred to assign the retirement accounts to Sulzer. She maintains that since the use of a QDRO was illegal, Sulzer is entitled to nothing. Additionally, she asserts that the imposition of a constructive trust in this case will encourage others to agree to provisions that are contrary to the law in case the law should some day be changed.

¶ 27. The judgment of divorce did not specifically require a QDRO, but provided for a QDRO "or an order of the Court having a similar effect." We need not speculate whether a legal mechanism existed at the

---

[5] Wisconsin Stat. § 40.08(1) (1987–1988) provided in relevant part:

The benefits payable to, or other rights and interests of any member, beneficiary or distributee of any estate under any of the benefit plans administered by the department . . . shall not be assignable, either in law or equity, or be subject to execution, levy, attachment, garnishment or other legal process except as specifically provided in this section.

time of the divorce that would have sufficiently ensured the division of the accounts to comply with the divorce judgment. As the *Lindsey* case indicates, the circuit court had broad discretionary powers over the mechanism of the division of pensions in order to fulfill the intent of the parties to divide them equally. *Lindsey v. Lindsey,* 140 Wis. 2d 684, 686, 412 N.W.2d 132 (Ct. App. 1987).

¶ 28. Here, there is no dispute as to the intent of the parties to divide the value of the pensions equally as of the time of the divorce. That they were not able to identify a legal mechanism at the time was unfortunate, but this does not preclude the circuit court from now imposing a constructive trust to accomplish their intent.[6]

¶ 29. With respect to Diedrich's allegation that imposing a constructive trust in this case will somehow encourage others to agree to provisions that are contrary to law, there is no indication that any of the parties knowingly agreed to a provision that was not legally permissible. If Sulzer had known that there was no legal mechanism to divide the benefits at issue and had intentionally defied the law, she would not be able

---

[6] Currently, the type of division sought by Sulzer and Fred can be accomplished by a qualified domestic relations order (QDRO). If Fred were alive, the division of the accounts could be accomplished with a QDRO. Wis. Stat. § 40.08(1m) (2001–2002) contains the rules pursuant to which a qualified domestic relations order issued on or after January 1, 1982 can be used to divide the accumulated rights and benefits of participants whose marriages have been terminated by a court on or after January 1, 1982. However, because Fred is deceased and the accounts have been titled in Diedrich's name, a QDRO cannot be used to accomplish the division.

to assert that her conduct was based on a mistake that could serve as grounds for imposing a constructive trust.

¶ 30. In sum, we conclude that Diedrich's retention of funds that are attributable to Sulzer's portion of the retirement accounts would be unjust to Sulzer. Further, the transfer of those funds to Diedrich resulted from a mutual mistake regarding the ability to divide the accounts at the time of the divorce and from Fred's naming of Diedrich as the beneficiary of all of the accounts, including Sulzer's portion. We therefore determine that the imposition of a constructive trust is warranted in this case.

## IV

██

¶ 31. We turn now to a discussion of the appropriate period during which the investment experience of Sulzer's portion of the retirement accounts should be included in the calculation of the amount subject to the constructive trust. The court of appeals determined that Sulzer is not entitled to the investment experience of her portion of the retirement accounts past the date of Fred's death. *Sulzer,* 258 Wis. 2d 684, ¶ 17–18. It concluded that, upon Fred's death, the funds at issue converted from retirement and deferred compensation benefits to survivorship benefits. *Id.,* ¶ 17.

¶ 32. Thus, according to the court of appeals, Sulzer is entitled only to the portion of the accounts that she would have received upon Fred's death. *Id.,* ¶ 17–18. Diedrich goes further and argues that if Sulzer is entitled to anything, the amount should be frozen as of the date of the divorce.

¶ 33. We disagree with both the court of appeals and Diedrich. In this case, the constructive trust should

include the investment experience of Sulzer's portion of the accounts up until the date of payment.

¶ 34. To support her argument that the amount should be frozen as of the date of the divorce, Diedrich cites the oral stipulation in which the value to be divided was to be "established as of today's date." She also cites the divorce judgment in which the accounts are to be "divided as to their balance on" September 6, 1989. Diedrich argues that there would be no need to make specific reference to a balance on a specific date if the parties did not intend that to be a limitation.

¶ 35. The oral stipulation and the divorce judgment do contain a limitation, but the limitation is not an elimination of Sulzer's entitlement to the investment experience of her portion after the date of the divorce. Rather, the limitation provides that she is not entitled to any portion of any of Fred's contributions to the retirement accounts that are attributable to periods after the date of the divorce or the investment experience of such contributions.

¶ 36. The oral stipulation and the divorce judgment do not contain an express provision regarding the calculation of investment experience on Sulzer's portion of the accounts. Nevertheless, both the oral stipulation and the divorce decree reflect Fred's and Sulzer's intent to divide the retirement accounts equally. However, it was not possible to immediately effect the division. We conclude that, to accomplish the intent of the parties of dividing the retirement accounts equally as of the date of the divorce, Sulzer should be entitled to the investment experience on her portion of the accounts.

¶ 37. This conclusion is consistent with our analysis in *Washington v. Washington,* 2000 WI 47, 234 Wis. 2d 689, 611 N.W.2d 261. In that case, we construed a divorce judgment dividing a pension fund to include

investment experience. The judgment, which involved a lump sum share of a pension not payable immediately, was silent on the issue of whether investment experience would be included and when and how payment would be made. *Id.,* ¶ 6. We determined that this silence made the judgment ambiguous. *Id.,* ¶ 32. We noted that the circuit court went to great lengths to ensure that the property was divided equally and that failure to consider allocation of investment experience on the pension could result in an unequal division of property. *Id.,* ¶ 28.

¶ 38. The same justifications that exist for extending the investment experience beyond the date of the divorce also apply to extending the investment experience beyond Fred's death. There is no reason why the investment experience attributable to Sulzer's portion after Fred's death should accrue to the benefit of Diedrich rather than Sulzer.

¶ 39. In *Washington,* we noted that the failure to divide investment experience would give the husband approximately 21 years of the investment experience on the lump sum awarded to both spouses. *Id.* We observed that a decision that gave the husband all of the investment experience on both shares appeared contrary to the circuit court's objective to divide the property equally and appeared unfair. *Id.*

¶ 40. Similar to *Washington,* the failure to include the investment experience up until payment to Sulzer appears contrary to the objective of the divorce judgment and the intent of the parties to divide the property equally. Further, it appears unfair to Sulzer to allow Diedrich to retain seven years of investment experience on Sulzer's portion of the accounts. Diedrich is entitled to no more and no less than what Fred would have received.

¶ 41. The court of appeals concluded that the funds at issue are no longer retirement benefits but were converted to survivorship benefits that were distributed upon Fred's death. *Sulzer,* 258 Wis. 2d 684, ¶ 17. The fact is, however, that the funds remain in WRS and Copeland accounts and are traceable. This may be a different case if Diedrich had removed the funds after Fred's death, making tracing impossible.

¶ 42. However, that is not the case here. The funds remain in WRS and Copeland accounts and the actual investment experience can be easily traced. We conclude therefore that the constructive trust should include the investment experience of Sulzer's portion of the accounts through the date of payment to Sulzer.

¶ 43. We remand this case to the circuit court for the appropriate calculations.[7] On remand, the circuit court should order Diedrich to cause the payout of Sulzer's portion of the accounts, including the investment experience. We note that a circuit court, in this type of case, has the discretionary authority to order an individual to select a specific retirement payout option

---

[7] We note that the expert's calculations were made as of August 8, 2001, the date of the circuit court judgment. Remand is appropriate not only to determine the investment experience between that date and the date of payment, but also to consider whether any changes in the law may have occurred since the date of the judgment that could affect the valuation.

At oral argument, Diedrich asserted that calculations upon remand should take into consideration that Fred died before reaching age 50. It is unclear from the record if the calculations need to be modified to reflect his age at the time of death. In addition, both at oral argument and in her reply brief, Sulzer acknowledged that the amount paid to her should be reduced by the amount of the tax consequences to Diedrich that are directly attributable to the payout of Sulzer's portion.

to accomplish a division of retirement assets. *Lindsey,* 140 Wis. 2d at 686. Similar to *Lindsey,* the circuit court in this case has the discretionary authority to order Diedrich to select the payout option of the WRS and Copeland accounts that will allow her to pay over Sulzer's portion of those accounts promptly and completely.

¶ 44. In sum, we conclude that the circumstances of this case warrant the imposition of a constructive trust and that the constructive trust should include the investment experience on Sulzer's portion of the retirement accounts through the date of payment to Sulzer. We therefore modify the decision of the court of appeals, affirm as modified, and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is modified and affirmed and, as modified, the cause is remanded.

¶ 45. DIANE S. SYKES, J. *(concurring in part, dissenting in part).* I agree with the majority's decision to impose a constructive trust in favor of Sulzer. I disagree, however, with Part IV of the majority opinion to the extent that it authorizes the imposition of a constructive trust in an amount that includes the investment experience of the retirement accounts up to the date of payment. I would affirm the court of appeals on all issues, including its determination that the constructive trust should include the investment experience of the retirement accounts only until the date of Fred Diedrich's death.

¶ 46. As the majority notes, a constructive trust is an "equitable device created by law to prevent unjust enrichment." *Wilharms v. Wilharms,* 93 Wis. 2d 671, 678, 287 N.W.2d 779 (1980); majority op., ¶ 20. While

the equities in this case fully support the imposition of a constructive trust against Mary Diedrich even though she is not at fault, her blamelessness should come into play in the discretionary determination of the extent to which investment experience on the retirement accounts is awarded.

¶ 47. The mutual mistake that precipitates the need to impose a constructive trust in this case justifies an award that includes the investment experience on Sulzer's portion of the retirement accounts up to the date of Fred Diedrich's death; it does not justify forcing Mary Diedrich to disgorge the investment experience on her survivorship interest in her deceased husband's retirement accounts. Mary Diedrich played no role in the mistake which led to the unjust deprivation of Sulzer's portion of the retirement accounts. The dispute here is between two essentially innocent parties, one who was a party to the original mistake and one who was not.

¶ 48. The majority finds it significant that the funds remain in the WRS and Copeland accounts and are therefore traceable. Majority op., ¶¶ 41–42. Mary Diedrich should not be penalized for choosing to leave her survivorship benefits in the retirement accounts. I would conclude, as did the court of appeals, that a constructive trust should be imposed in favor of Sulzer in an amount equal to one-half the value of the retirement accounts as of the date of divorce, plus investment experience up to the date of Fred Diedrich's death. Sulzer is certainly equitably entitled to that amount of investment experience; an amount that encompasses the post-death investment experience is harder to equitably justify under the circumstances here.

¶ 49. The constructive trust equities distinguish this case from *Washington v. Washington*, 2000 WI 47,

234 Wis. 2d 689, 611 N.W.2d 261. As the majority notes, *Washington* was a divorce case in which the husband and wife sought to divide the husband's pension. Majority op., ¶ 39. The dispute over the proper valuation of the pension fund was between the divorcing parties, and the divorce judgment specified that the pension was to be divided equally between the parties. *Id.* Here, the dispute is no longer between the divorcing parties but between a first and second wife over a deceased husband's retirement accounts; the determination of the appropriate valuation of the constructive trust award turns on what is equitably required under the circumstances, not what is required to effectuate an equal property division in a divorce, as in *Washington*.

¶ 50. Mary Diedrich is an innocent non-party to the mistake which justifies the imposition of the constructive trust in favor of Sulzer. She has suffered the loss of her husband and a prolonged court battle over a legal mistake she had no part in. I would conclude that Sulzer is equitably entitled to a constructive trust in the amount of one-half the value of the retirement accounts as of the date of divorce, plus investment experience up to the date of Fred Diedrich's death. I dissent from that part of the majority opinion which awards investment experience through the date of payment; in all other respects, I concur.

¶ 51. I am authorized to state that Justice JON P. WILCOX joins this concurring and dissenting opinion.