# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1240 |
| COMPLETE TITLE: | |

In re the marriage of:

Patricia A. Johnson, p/k/a Patricia Masters,
       Petitioner-Appellant,
    v.
Michael R. Masters,
       Respondent-Respondent.

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | May 17, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 7, 2012 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Kathryn W. Foster |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed.) BRADLEY, J., ABRAHAMSON, C.J., concur. (Opinion filed.) ZIEGLER, ROGGENSACK, GABLEMAN concur. (Opinion filed.) |
| DISSENTED: | PROSSER, J., dissents. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner-appellant, there was a brief (in court of appeals) by *Joseph F. Owens* and *Law Offices of Joseph F. Owens*, New Berlin, *and Debra K. Riedel* and *Law Offices of Debra K. Riedel*, New Berlin, and a reply brief to the Supreme Court by *Joseph Owens* and *Debra K. Riedel*. Oral argument by *Joseph F. Owens*.

For the respondent-respondent, there was a brief by *Erik I. Colque* and *Colque Law, LLC*, Waukesha, and oral argument by *Erik I. Colque*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP1240
(L.C. No. 1988FA73)

STATE OF WISCONSIN        :        IN SUPREME COURT

---

**Patricia A. Johnson,**

      **Petitioner-Appellant**

    **v.**

**Michael R. Masters,**

      **Respondent-Respondent**

**FILED**

**MAY 17, 2013**

Diane M. Fremgen
Clerk of Supreme Court

---

APPEAL from an order of the Circuit Court for Waukesha County, Kathryn W. Foster, Judge. *Reversed and cause remanded.*


¶1 N. PATRICK CROOKS, J. This case is before the court on certification from the court of appeals pursuant to Wis. Stat. § 809.61 (2009-10). It concerns a dispute over the enforceability of a pension award in a divorce judgment. The specific question we address is whether the circuit court erred when it denied Patricia Johnson's motion for the entry of a qualified domestic relations order (QDRO) on the grounds that the motion was barred by Wis. Stat. § 893.40, a statute of

repose,[1] which states that "action upon a judgment or decree . . . shall be commenced within 20 years after the judgment or decree is entered or be barred." Johnson had filed a motion on September 13, 2010, seeking to compel Michael Masters to provide pension information so that the necessary QDRO could be prepared and his Wisconsin Retirement System (WRS) pension could be divided in accordance with the judgment of divorce. The judgment in the divorce had been filed more than 20 years before, on July 20, 1989. With regard to the pension benefits, the judgment had awarded Johnson half of the value accrued during the span of the marriage and stated that a QDRO "shall be submitted to secure these rights."

¶2 This court has upheld the application of Wis. Stat. § 893.40 in a family law context.[2] We see no evidence for the argument that the legislature intended for family law judgments to be categorically exempted from its application though we recognize the realities of family court judgments and see some

---

[1] We address the question as presented in the certification by the court of appeals and as briefed by the parties. We do not attempt to answer questions not raised by the certification.

[2] That case involved an action by the State to enforce payment of child support that had been ordered in a divorce judgment. We held that Wis. Stat. § 893.40 governed the case. We said, "[U]nder the statute, an action brought to enforce a child support judgment must be commenced within 20 years of the date when the judgment is entered. The period of limitation begins to run upon entry of judgment, irrespective of whether any payment under that judgment has been missed." Hamilton v. Hamilton, 2003 WI 50, ¶4, 261 Wis. 2d 458, 661 N.W.2d 832.

evidence that this court has made certain accommodations for the ongoing obligations that are common in that area. There is a twist in this case, however, that we consider dispositive of the question, and that is the fact that even though the 1989 judgment required the filing of a QDRO, the WRS was not authorized under statute to accept a QDRO related to this divorce until May 2, 1998.

¶3 In order to interpret the relevant statutes to avoid "absurd or unreasonable results,"[3] and in order to "constru[e] each in a manner that serves its purpose"[4] as we are bound to do, we hold that Johnson's motion is not barred by the operation of Wis. Stat. § 893.40. The judgment contained a provision that required the filing of a QDRO with the WRS, and it was not until 1998 that legislation authorized WRS to accept such orders for marriages such as this one that were terminated in 1989. It would be absurd and unreasonable to construe the statute of repose in such a way that it would begin to run at the time of a judgment with regard to a provision that assigned Masters' interest contrary to existing law, which was and continued for the next nine years to be that WRS pension interests were not assignable.[5] Construing the statute as starting to run as to the

---

[3] _State ex rel. Kalal v. Circuit Court for Dane County_, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

[4] _State v. Szulczewski_, 216 Wis. 2d 495, 503, 574 N.W.2d 660 (1998).

[5] Wis. Stat. § 40.08(1)(1987-88), in effect at the time of the 1989 divorce judgment, stated:

pension provision at the point when the provision was no longer contrary to law is a way to retain the statute's limiting function "in a manner that serves its purpose." Under the circumstances present in this case[6] where a statute precludes a provision in a judgment, the statute of repose cannot begin to run as to that provision until the legislature changes the law such that the provision can be carried out. In this case, that change went into effect on May 2, 1998, and the statute of repose will bar actions on such a provision only after May 1, 2018. We therefore reverse the order of the circuit court and remand for further proceedings consistent with this opinion.

BACKGROUND

¶4 The circuit court's order that we review denied Johnson's motion for the entry of a QDRO and granted Masters' motion to dismiss based on Wis. Stat. § 893.40. The QDRO that Johnson sought from the Waukesha County Circuit Court, the Honorable Kathryn W. Foster presiding, is an order that would authorize the administrator of Masters' pension plan, the Wisconsin Retirement System, to assign Johnson a portion of his

---

The benefits payable to, or other rights and interests of, any member, beneficiary or distributee of any estate under any of the benefit plans administered by the department . . . shall not be assignable, either in law or equity, or be subject to execution, levy, attachment, garnishment or other legal process except as specifically provided in this section.

[6] We address the question as presented in the certification by the court of appeals and as briefed by the parties. We do not attempt to answer questions not raised by the certification.

4

pension benefits, in accordance with the divorce judgment.  It is important to provide a brief explanation of what a QDRO is and why there was no authority for the WRS to accept one when Johnson and Masters divorced in 1989.

¶5  QDROs are defined by the Employee Retirement Income Security Act (ERISA), the federal law that governs private sector pension plans.  "The primary objective of ERISA is to protect employees from the mismanagement of funds set aside to finance employee benefits and pensions by establishing a comprehensive regulatory scheme that required employers to fulfill certain reporting, disclosure and fiduciary duties." Aurora Med. Group v. DWD, 2000 WI 70, ¶16, 236 Wis. 2d 1, 612 N.W.2d 646 (citations omitted).  Federal law generally prohibits assigning pension benefits; however, it provides a mechanism in QDROs to assign pension benefits under certain circumstances:

> [T]he anti-alienation provision in [the Employee Retirement Income Security Act] precludes assignment of the pension benefits [without] a valid QDRO. *See* 29 U.S.C. § 1056(d)(1) ("[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated").  ERISA's prohibition on the assignment or alienation of pension benefits has been strictly enforced.  A QDRO is an express exception to ERISA's anti-alienation provision.  See ERISA § 1056(d)(3)(B)(i)(I). . . . 29 U.S.C. § 1056(d)(3)(B)(i) defines a "qualified domestic relations order" as a domestic relations order
>
> > (I)  which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

> (II)    with respect to which the requirements of subparagraphs (C) and (D) are met....

In re Gendreau, 191 B.R. 798, 801-02 (B.A.P. 9th Cir. 1995) aff'd, 122 F.3d 815 (9th Cir. 1997) (citations omitted). "A qualified domestic relations order permits payment of benefits of qualified private retirement plans to one other than the employee spouse. Such a recipient is denominated an 'alternate payee,' which includes a nonemployee spouse." Schinner v. Schinner, 143 Wis. 2d 81, 86 n.1, 420 N.W.2d 381 (Ct. App. 1988) (citations omitted).

¶6    ERISA does not apply to government retirement plans such as the WRS, see 29 U.S.C.A. § 1003(b)(1), and the Wisconsin statutes that governed those plans initially made no provision for QDROs.    In Lindsey v. Lindsey, the court of appeals described an early unsuccessful attempt to pass legislation authorizing the Wisconsin Retirement System to accept QDROs:

> 1985 Assembly Bill 689 was a proposal to create a procedure whereby a participant's accumulated rights and benefits under the Wisconsin Retirement System could be made the subject of a "qualified domestic relations order." See Analysis by the Legislative Reference Bureau to 1985 Assembly Bill 689. The fiscal note to this proposed legislation observed that "[t]he statutes governing the Wisconsin Retirement System (WRS) do not provide a mechanism for dividing rights and benefits under the system to comply with a court order." "The purpose of this bill is to provide a mechanism for the division of WRS benefits pursuant to a qualified domestic relations order issued by a court in a manner similar to that established by Federal law for private sector pension plans." Report of Joint Survey Committee on Retirement Systems for 1985 Assembly Bill 689 (emphasis added). This proposed legislation failed to pass the Assembly.

6

Lindsey v. Lindsey, 140 Wis. 2d 684, 694 n.8, 412 N.W.2d 132 (Ct. App. 1987).  The state of the law in Wisconsin in 1989 was that benefits, rights and interests of any WRS member "shall not be assignable, either in law or equity, or be subject to execution, levy, attachment, garnishment or other legal process except as specifically provided in this section[,]" and no provisions were included for QDROs.  Wis. Stat. § 40.08(1) (1987-88).  That remained the law until the passage of 1989 Wis. Act 218, which authorized WRS to accept QDROs beginning April 28, 1990, but did not apply retroactively to divorces occurring prior to the new statute's effective date, which was April 28, 1990.  It was not until May 2, 1998, that WRS was authorized by 1997 Wis. Act 125 to accept QDROs related to divorces that became effective between January 1, 1982, and April 28, 1990.  In part, 1997 Wis. Act 125 stated,

> 40.08(1m)(k) of the statutes is created to read: . . . [A] court may revise or modify a judgment or order specified under subd. 1. for participants whose marriages were terminated by a court on or after January 1, 1982, and before April 28, 1990, but only with respect to providing for payment in accordance with a qualified domestic relations order of benefits under the Wisconsin retirement system that are already divided under the judgment or order.

1997 Wis. Act 125, § 5.  That authorization closed a gap that had been created by the earlier legislation authorizing WRS to accept QDROs but failing to state clearly that it applied retroactively to divorces that became final after January 1, 1982 and before April 28, 1990.

7

¶7    The final judgment in Johnson and Masters' divorce was entered on July 20, 1989, so it fell into the category of divorces that were covered by the change in the law that took effect in 1998 with regard to QDROs.  The judgment stated that the Marital Agreement between the parties was appended to the judgment and was "approved as reasonable" and was incorporated into the judgment of the circuit court.  The Marital Agreement included the following provisions:

V. Property Division – Pension

The Petitioner shall be awarded [half] of the value of the Respondent's Wisconsin Retirement System benefits accrued from date of marriage thr[ough] the date of divorce.  A QDRO shall be submitted to secure these rights.

. . .

X. Execution of documents

Now or in the future, upon demand, the parties agree to execute and deliver any and all documents which may be necessary to carry out the terms and conditions of this marital agreement.

. . .

XII. Divesting of property rights

Except as otherwise provided for in this marital agreement, each party shall be divested of and each party waives, renounces and gives up pursuant to Wis. Stats. § 861.07, all right, title and interest in and to the property awarded to the other. All property and money received and retained by the parties shall be the separate property of the respective parties, free and clear of any right, title, interest or claim of the other party, and each party shall have the right to deal with and dispose of his or her separate property as fully and effectively as if the parties had never been married.

8

XIII. Mutual releases

Neither party may, at any time hereafter, sue the other, or his or her heirs, personal representatives or assigns, for the purpose of enforcing any or all of the rights relinquished and/or waived under this marital agreement. Both parties also agree that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by either party.

. . .

XX. Survival of marital agreement after judgment

Both parties agree that certain paragraphs of this marital agreement shall survive the subsequent judgment of divorce and shall have independent legal significance. This marital agreement is a l[e]gally binding contract, entered into for good and valuable consideration. In the future, either party may enforce this specific marital agreement in this or any other court of competent jurisdiction.

¶8 In April 2009, nearly 20 years after the divorce was final, Masters retired from his job as a school janitor. It is undisputed that Masters did not notify Johnson that he was retiring. According to an undisputed affidavit in the record, Johnson learned in March 2010 that Masters had retired. On March 3, 2010, Johnson filed a form QDRO that was signed by the circuit court on March 5, 2010, and vacated by stipulation of the parties 24 days later when it was discovered that it contained an error. Johnson then retained new counsel and took steps to obtain a valuation of the pension and draft a QDRO to obtain her portion of the pension.

¶9 When WRS notified Johnson that Masters' authorization was required in order to disclose the pension value information, she sought his authorization. On September 7, 2010, Johnson

9

received notification that Masters would not provide the necessary authorization. Johnson then filed a motion on September 12, 2010, for orders to require Masters to release his pension information. At a hearing before a court commissioner, Masters was ordered to sign the authorization. He then moved for a hearing de novo in the circuit court.

¶10 In the circuit court, Masters moved to dismiss the motion on the grounds that Johnson's motion was barred by Wis. Stat. § 893.40 because it states that action must be commenced within 20 years after "the judgment or decree is entered," and it includes no exemptions for family law judgments. In the alternative, he argued that the doctrine of laches barred Johnson's claim because her delay in seeking the QDRO was unreasonable and prejudiced him. Johnson argued that the statute of repose could not operate as a bar to her motion in light of Wis. Stat. § 767.01, in Ch. 767, Actions Affecting the Family, which states that "circuit courts . . . have authority to do all acts and things necessary and proper in those actions and to carry their orders and judgments into execution as prescribed in this chapter." Alternatively, Johnson argued that the doctrines of unclean hands and equitable estoppel precluded Masters' statute of repose defense.[7] The circuit court held two hearings on the matter, and the parties briefed the issues extensively.

---

[7] The parties' briefs to the circuit court contained other arguments that are not recited here because they were not pursued on appeal.

¶11  The circuit court granted Masters' motion to dismiss based on Wis. Stat. § 893.40, and it denied his motion to dismiss based on the doctrine of laches.  It denied Johnson's motion for the entry of a QDRO.  In ruling from the bench, the circuit court stated:

> The, quote, cause of action, the ability to obtain a QDRO, was not directly triggered by the actual retirement of Mr. Masters.  It was, in fact, a result of a 1989 divorce decree and after the passage of the Wisconsin Act of 125 in 1997 was subject to be executed from that time going forward, not contingent on the retirement date of Mr. Masters.[8]

¶12  Johnson appealed the denial of her motion.[9]  The court of appeals certified the case to this court, and we accepted certification.

## DISCUSSION

¶13  The question presented by this case is how the statute that requires "action upon a judgment or decree" to be "commenced within 20 years" applies to a judgment containing a provision that cannot be performed under existing law at the time of judgment.  It is a question of statutory interpretation, a question of law that this court reviews de novo.  <u>Teschendorf</u>

---

[8] The circuit court also stated that the doctrine of laches would favor the petitioner's position except that it "runs full face into the stone wall in the form of the statute of repose." The circuit court expressed its belief that the result was inequitable: "I frankly hope I am wrong [if the case is appealed] because I do believe my decision is a harsh result."

[9] Masters cross-appealed the denial of his motion to dismiss based on the doctrine of laches; he filed a notice of voluntary dismissal of his cross-appeal on October 6, 2011.

11

v. State Farm Ins. Cos., 2006 WI 89, ¶9, 293 Wis. 2d 123, 717 N.W.2d 258. We begin with established principles of statutory interpretation:

> Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning. Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). "Under the ordinary rules of statutory interpretation statutes should be reasonably construed to avoid conflict. When two statutes conflict, a court is to harmonize them, scrutinizing both statutes and construing each in a manner that serves its purpose." State v. Szulczewski, 216 Wis. 2d 495, 503, 574 N.W.2d 660 (1998).

¶14 We considered a related question concerning the interpretation of Wis. Stat. § 893.40 in Hamilton v. Hamilton, 2003 WI 50, 261 Wis. 2d 458, 661 N.W.2d 832, which involved an action by the State to collect child support arrearages "almost 30 years after the original judgment, more than 20 years after the amended judgment, and more than 15 years after [the] youngest child reached the age of majority." Id. at ¶2.

> We hold that Wis. Stat. § 893.40, which became effective on July 1, 1980, governs the time within which a party may bring an independent action to

12

collect child support arrearages that accumulated after the statute's effective date. In addition, we conclude that, under the statute, an action brought to enforce a child support judgment must be commenced within 20 years of the date when the judgment is entered. The period of limitation begins to run upon entry of judgment, irrespective of whether any payment under that judgment has been missed.

Id., ¶4.

¶15 The parties' arguments with regard to statutory interpretation focus on the question of whether the legislature intended to subject family law judgments to Wis. Stat. § 893.40 or to exempt them from it. The statute states:

> Action on judgment or decree; court of record. Except as provided in s. 846.04(2) and (3) and 893.415, action upon a judgment or decree of a court of record of any state or of the United States shall be commenced within 20 years after the judgment or decree is entered or be barred.

Johnson argues that her motion is not "action upon a judgment or decree" for purposes of Wis. Stat. § 893.40. She points to Wis. Stat. § 801.02 as providing guidance for defining the terms "action" and "commence." The statute states:

> [A] civil action in which a personal judgment is sought is commenced as to any defendant when a summons and a complaint naming the person as defendant are filed with the court, provided service of an authenticated copy of the summons and of the complaint is made upon the defendant under this chapter within 90 days after filing.

Because her motion did not commence with a summons and complaint, she argues, it does not constitute "action" within the meaning of Wis. Stat. § 893.40. She also points to language from a footnote in this court's decision in Hamilton:

13

> The court of appeals noted that both Walter and the State agree that the State's motion is an "independent action" upon the judgment. Apparently, neither party argues that the State could not bring a motion within the context of the original action. We do not address this issue because it has no bearing on our present decision.

Hamilton, 261 Wis. 2d 458, ¶9 n.4 (citations omitted). She argues that language means that the applicability of the statute of repose depends on a distinction between an "independent action" and "a motion within the context of the original action." She contends that the Hamilton footnote signaled that the court wished to limit the application of the statute of repose in the family law context to independent actions brought by third parties.[10]

¶16 Masters argues that the language of Wis. Stat. § 893.40 is unambiguous and makes no exceptions that would

---

[10] Johnson's other argument is that her interest in the pension plan was created at the time the judgment was entered and that she is therefore "entitled to seek enforcement of the terms of the divorce judgment at any time . . . ." App. Br. at 12. For that proposition, she cites Dewey v. Dewey, 188 Wis. 2d 271, 279, 525 N.W.2d 85 (Ct. App 1994) (holding that the former wife's "interest in one-half of [the former husband's] pension was not a part of his bankruptcy estate nor was it a dischargeable debt. It was [the former wife's] separate property upon which the timing of the execution of the QDRO had no effect.") We note that the "timing of the execution of the QDRO" in that case refers to the significance of the timing before or after a bankruptcy action; the language cannot be fairly characterized as standing for the proposition that timing is of no consequence whatsoever. In that case, there was no discussion of a statute of repose; the former wife's action to enforce the judgment was commenced two years after the judgment was entered. In any case, we decide this case on other grounds and need not address this argument further.

14

exempt Johnson's motion from being barred 20 years after the date of the judgment. He argues that this court's holding in Hamilton is that Wis. Stat. § 893.40 applied to bar an action in a child support case, and it should be dispositive of this case. He argues that it would contravene the statute's language and would nullify the statute if the court were to carve out an exception for family law judgments or make a distinction between actions begun by motion and those begun by summons and complaint. He argues that the legislature made it clear that it had no intention of exempting post-judgment actions in family law cases from the requirements of the statute of repose because it did actually enact a specific exemption in 2003 in response to Hamilton and limited that exemption to actions for child support.[11]

¶17 We first address why Hamilton does not answer the question presented in this case. First, we note that the

---

[11] Following this court's decision in Hamilton, the legislature accepted the court's invitation to clarify its intention with regard to limitations on actions to collect child support owed under a judgment. It passed 2003 Wis. Act 287, which created Wis. Stat. § 893.415. The statute states in relevant part:

> (2) An action to collect child or family support owed under a judgment or order entered under ch. 767, or to collect child support owed under a judgment or order . . . shall be commenced within 20 years after the youngest child for whom the support was ordered under the judgment or order reaches the age of 18 or, if the child is enrolled full-time in high school or its equivalent, reaches the age of 19.

Wis. Stat. § 893.415.

footnote on which Johnson relies at most implies only that a legally meaningful distinction may exist between an "independent action" on a judgment and "a motion within the context of the original action." It does not necessarily stand for the proposition that Hamilton "has no application to post-judgment motions brought between the original divorcing parties pursuant to Wis. Stat. § 767.281 within the action itself." App. Br. at 7. That far overstates a footnote that stated only, "We do not address this issue because it has no bearing on our present decision." Hamilton, 261 Wis. 2d 458, ¶9 n.4. Further, the holding of the case is stated elsewhere in the decision as "under the statute, an action brought to enforce a child support judgment must be commenced within 20 years of the date when the judgment is entered." Id. at ¶4 (emphasis added). That language would appear to include an action "between the original divorcing parties."

¶18 Masters considers Hamilton's holding dispositive of this case because he would apply the statute here in the same way as the court did in Hamilton to bar the action. But we have already stated that we consider a crucial fact in this case to be that a QDRO could not be assignable until permitted by the legislature. That fact makes this case distinguishable from Hamilton. The provision the State sought to enforce in that case was a provision ordering child support payments, and there was no statute existing at the time of the judgment that prevented the filing of the proper documents to carry out that judgment. Therefore, though it addresses similar issues and

contains helpful language with regard to the application of Wis. Stat. § 893.40, <u>Hamilton</u> does not govern the analysis here.

¶19 This case raises thorny questions. Wisconsin Stat. § 893.40 cannot be said to be ambiguous as to the time limitation. While it does not define "action on a judgment," it does state clearly that the time period during which action on a judgment or decree must be commenced is "within 20 years after the judgment or decree is entered." And yet, we find that the facts of the case before us compel a more careful look. As we have explained, the 1989 divorce judgment required a filing of a QDRO. The statute that authorized WRS to accept such a filing in this divorce did not come into existence until nine years later when the legislature passed 1997 Wis. Act 125. We cannot apply this statute of repose without recognizing the fact that, at the time of the judgment, a statute actually foreclosed for nine years the single action, crucial to the pension's assignability, that had to occur to secure the pension award. That is the crux of this case.

¶20 This court, in a previous case, considered the application of a statute that appeared to be unambiguous yet had troubling implications appearing to lead to a disturbing outcome if applied literally.[12] In <u>Teschendorf</u>, this court unanimously

---

[12] It is the court's role, in the context of statutory interpretation, to give effect to legislation unless we find that the legislature could not have intended the absurd or unreasonable results a statute appears to require. As we have stated:

agreed to affirm a court of appeals ruling refusing to apply a reducing clause in an uninsured motorist provision in an auto insurance policy. The question there involved construing Wis. Stat. § 632.32(5)(i), which authorizes such reducing clauses, and determining whether it applied where worker's compensation payments were made to the State of Wisconsin Work Injury Supplemental Benefit Fund. Although the court was unanimous in affirming, the justices were evenly divided on whether the statute in question was ambiguous.[13] The position of three justices was that

> The purpose in this situation is to verify that the legislature did not intend these unreasonable or unthinkable results. See Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527 (1989) (Scalia, J., concurring); Kalal, 271 Wis. 2d 633, ¶52 n.9, 681 N.W.2d 110; see also Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 465 (1989) (invoking the Supreme Court's absurdity exception to the plain language of the statute); Robbins v. Chronister, 402 F.3d 1047, 1050 (10th Cir. 2005) (collecting federal circuit court and Supreme Court cases applying the absurdity exception). Because our purpose in these situations is grounded in open disbelief of what a statute appears to require, we are bound to limit our off-statute investigations to obvious aberrations.

Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶15, 293 Wis. 2d 123, 717 N.W.2d 258.

[13] Chief Justice Shirley Abrahamson took a different position on the statutory construction approach and concurred in the holding. Teschendorf, 293 Wis. 2d 123, ¶70 (Abrahamson, C.J., concurring) (writing that "[a] better approach to statutory construction would be to drop the ambiguous/unambiguous/literal/plain meaning pretense and instead take a comprehensive view of statutory interpretation").

> [a]lthough the meaning of the statute appears to be plain, a literal application of the language would be absurd. As a general rule, courts apply the ordinary and accepted meaning of statutory language, unless it produces an absurd result. Seider, 236 Wis. 2d 211, ¶32, 612 N.W.2d 659. Because a literal application . . . would produce an absurd and unreasonable result in certain situations, Justices Wilcox, Crooks, and Butler construe the statute to avoid that result.

Teschendorf, 293 Wis. 2d 123, ¶32. After setting forth examples of how the statute if applied as unambiguously written would create untenable results in certain circumstances, the opinion adds, "Because this literal interpretation produces absurd results and defies both common sense and the fundamental purpose of [the statutes governing worker's compensation and uninsured motorist coverage], Justices Wilcox, Crooks, and Butler reject it unless extrinsic sources reveal the legislature intended these consequences." Id., ¶43 (citing to Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527 (1989) (Scalia, J., concurring) ("We are confronted here with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional, result. Our task is to give some alternative meaning to the word 'defendant' in Federal Rule of Evidence 609(a)(1) that avoids this consequence . . . .")).

¶21 The reasoning followed by three justices in Teschendorf, as well as that followed by the court in Wenke v.

Gehl Co.,[14] is apropos in this case.  As with the statutes involved in Teschendorf, the application of Wis. Stat. § 893.40 in certain circumstances may produce results that "def[y] both common sense and the fundamental purpose" of the statute.  The judgment here has the flaw, as to the pension award provision, that under the statute then in effect the pension was not assignable.  Where the statute clearly states that WRS pension interests "shall not be assignable, either in law or in equity," and a court entered a judgment with a provision assigning such an interest, that fact must be taken into account.[15]

¶22  In the case under review, the dispositive fact in our view is that the statute operated to prohibit pension interests from being assigned at the time the judgment was entered.  We do

---

[14] For another instance when this court has confronted apparently dispositive clear language in a source of law that was ultimately held not to be dispositive of the issue, see Wenke v. Gehl Co., 2004 WI 103, ¶49, 274 Wis. 2d 220, 682 N.W.2d 405 (noting that "[t]he language of these [Judicial Council] Committee Notes [setting forth the legislative intent] does appear, on its face, to speak exactly to Wenke's construction of both §§ 893.05 and 893.07" but nonetheless adopting a contrary interpretation of the legislative intent in light of "a largely unperceived shift in the meaning attached to the phrase 'statute of repose.'")

[15] The record does not disclose whether the original counsel perhaps believed that the legislature would authorize QDROs and that it would eventually be possible to file one in accordance with the judgment of divorce, but as we noted above, attempts were being made to pass such legislation as early as 1985. Bills authorizing QDROs were introduced on February 21 and March 15, 1989, and were pending at the time the divorce judgment was entered in July.  The following year 1989 Wis. Act 218 became law, but as explained above, its provisions did not cover divorces granted between January 1, 1982 and April 28, 1990.

note that there might be other grounds as well for reaching the result we reach, founded on the unique characteristics of family law judgments. In family law matters especially, courts often encounter provisions in orders that create continuing obligations that may very well extend beyond 20 years, such as support, maintenance, property transfers, agreements for the sale of property, and educational expenses payments. We have recognized the unique nature of family law judgments in another context, which lends support to our holding. Rules promulgated by this court, which of course are procedural and not substantive, do treat family law orders differently from others in one telling respect. They set the required minimum time periods for courts to retain "the original paper records" for various types of cases. See SCR 72.01, Retention of original record. As might be expected, the minimum time periods set for courts to retain records for various types of cases corresponds to the relevant statute limiting enforcement of the judgment. For example, civil case files and records of money judgments are to be retained for 20 years, consistent with Wis. Stat. § 893.40's 20-year limitation on enforcing such judgments. See SCR 72.01(1) and (5). The retention requirements for delinquent income or franchise tax warrants or liens are tied directly to relevant statutes regarding their enforcement, and the rule notes that for warrants or liens that are renewed, "a new 20-year retention period begins from the date on which the renewal is filed with the clerk of circuit court." See SCR 72.01(7m).

21

¶23 With regard to family case files, family court records, family court minute records and maintenance and support payment records, the rule departs from the practice of tying the retention period to a recognized limitation on enforcing judgments and instead sets the required minimum for retaining such records as follows:

> [Thirty] years after entry of judgment of divorce, legal separation, annulment, or paternity, or entry of a final order, except that after 30 years, for any case file for which related support or maintenance payments are continuing to be made, 7 years after final payment or after an order terminating maintenance is filed.

See SCR 72.01(11), (12), (13), and (14). We suggest only that these procedural rules reflect a recognition on the part of this court that in some respects ongoing obligations are a common feature of family law judgments, and whether observing the obligation to construe statutes to avoid absurd results or exercising their equitable powers, circuit courts, under Wis. Stat. § 767.01, in Ch. 767, Actions Affecting the Family, "have authority to do all acts and things necessary and proper in those actions and to carry their orders and judgments into execution as prescribed in this chapter."

¶24 For example, in Bliwas v. Bliwas, 47 Wis. 2d 635, 178 N.W.2d 35 (1970), we considered a stipulation in which the divorcing couple had agreed that the father would "pay the cost of tuition, books, supplies, rent, food allowance and certain miscellaneous expenses" for his son's college and graduate professional expenses in a Wisconsin school even beyond his

22

twenty-first birthday; the court-ordered support payments, however, would be lowered and would then terminate on the son's twenty-first birthday. Id. at 637. While the question presented in that case had to do with the proper procedural method for bringing the father, who was not complying with the stipulation, into court, we addressed at some length the basis for enforcing the stipulation:

> However, we hold that the enforcement of a family court order, which would not be enforceable without a prior stipulation of the parties that it be made part of the decree, rests not so much in the enforcement of a contractual obligation or even extension of jurisdiction of the court, as it does in recognizing that a person who agrees that something be included in a family court order, especially where he receives a benefit for so agreeing, is in a poor position to subsequently object to the court's doing what he requested the court to do. One leading text puts the proposition involved in the following language: "[W]here the court disposes of the property of the parties by stipulation . . . the general rule applies that a party who procures or consents to the entry of the decree is estopped to question its validity, especially where he has obtained a benefit from it."

Id. at 639-40. The decision went on to quote from another jurisdiction in support of such a rule:

> In a case where a wife had received certain advantages under the award of the divorce court, made pursuant to a stipulation of the parties, the Supreme Court of the State of Washington held it to be well established law that, " . . . even though a decree is void as beyond the power of the court to pronounce, a party who procures or gives consent to it is estopped to question its validity where he has obtained a benefit therefrom."

Id. at 640 (citing Svatonsky v. Svatonsky, 389 P.2d 663, ___ (Wash. 1964)).

23

¶25 Though we do not decide this case on grounds of equitable estoppel, it appears to support our decision and to provide independent grounds for our holding. We have addressed the doctrine in similar cases, and in Rintelman v. Rintelman, 118 Wis. 2d 587, 596, 348 N.W.2d 498 (1984), we held:

> In situations such as this one, all that need be shown to constitute an estoppel is that both parties entered into the stipulation freely and knowingly, that the overall settlement is fair and equitable and not illegal or against public policy, and that one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement.

We recently addressed a related issue where a stipulation and order established a 33-month unmodifiable floor for child support payments, and a party was seeking modification of the order. In May v. May, we emphasized courts' deference to parties' stipulations: "[W]e are sensitive to the importance and prevalence of stipulations in helping families going through difficult and litigious divorces and curbing disagreements [between] the parties. The ability to contract is fundamental to our legal system and may aid parties in settling their divorces more amicably." May v. May, 2012 WI 35, ¶18, 339 Wis. 2d 626, 813 N.W.2d 179. The court went on to add:

> [W]here the parties to a child support order have entered into a stipulation in regard to child support for a limited period of time that the court has adopted, courts will attempt to give effect to the parties' intentions where the stipulation was entered into freely and knowingly, was fair and equitable when entered into, and is not illegal or violative of public policy. In this context, a court's review

24

typically will consider the doctrine of equitable estoppel, by which a party may be precluded from challenging an agreement when the elements of estoppel set forth in <u>Rintelman</u> are satisfied.

<u>Id</u>., ¶36 (citation omitted). We recognize the elements of estoppel in several key provisions in the stipulation here that was incorporated into the judgment:

X. Execution of documents

Now or in the future, upon demand, the parties agree to execute and deliver any and all documents which may be necessary to carry out the terms and conditions of this marital agreement.

. . .

XII. Divesting of property rights

Except as otherwise provided for in this marital agreement, each party shall be divested of and each party waives, renounces and gives up pursuant to Wis. Stats. § 861.07, all right, title and interest in and to the property awarded to the other. All property and money received and retained by the parties shall be the separate property of the respective parties, free and clear of any right, title, interest or claim of the other party, and each party shall have the right to deal with and dispose of his or her separate property as fully and effectively as if the parties had never been married.

XIII. Mutual releases

Neither party may, at any time hereafter, sue the other, or his or her heirs, personal representatives or assigns, for the purpose of enforcing any or all of the rights relinquished and/or waived under this marital agreement. Both parties also agree that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by either party.

In light of these provisions as agreed upon by the parties, the doctrine of equitable estoppel supports our holding where

25

Masters had promised in 1989 "in the future, upon demand, . . . to execute and deliver any and all documents which may be necessary to carry out the terms and conditions of this marital agreement."

CONCLUSION

¶26 In order to interpret the relevant statutes to avoid "absurd or unreasonable results," and in order to "constru[e] each in a manner that serves its purpose" as we are bound to do, we hold that Johnson's motion is not barred by the operation of Wis. Stat. § 893.40. The judgment required the filing of a QDRO with the WRS, and it was not until 1998 that legislation authorized WRS to accept such orders for marriages such as this one that were terminated in 1989. It would be absurd and unreasonable to construe the statute of repose in such a way that it would begin to run at the time of a judgment with regard to a provision that assigned Masters' interest contrary to existing law, which was and continued for the next nine years to be that WRS pension interests were not assignable. Construing the statute as starting to run as to that provision at the point when the provision was no longer contrary to law is a way to retain its limiting function "in a manner that serves its purpose." Under the circumstances present in this case where a statute precludes a provision in a judgment, the statute of repose cannot begin to run as to that provision until the legislature changes the law such that the provision can be carried out. In this case, that occurred on May 2, 1998, and the statute of repose will bar actions on that provision after

26

May 1, 2018.  We therefore reverse the order of the circuit court and remand for further proceedings consistent with this opinion.

*By the Court.*—Reversed and remanded.

¶27 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I join the majority opinion authored by Justice Crooks and the concurrence authored by Justice Bradley. I write separately to address the characterization of a circuit court's exercise of equitable powers in Justice Ziegler's concurrence as "based solely on the subjective determination of each judge who reviews such a question" and "an arbitrary determination of any one judge on any given day." Justice Ziegler's concurrence, ¶41.

¶28 If a circuit court exercises its discretionary equitable powers in a subjective, arbitrary fashion instead of setting forth logical, rational reasoning based on the facts of record and a correct statement of the law, the circuit court has erred and its ruling will be reversed on appeal.

¶29 The comment in Justice Ziegler's concurrence equating discretion with judicial subjectivity and arbitrariness does a disservice to judicial decision making and to the circuit courts of the state. The comment cannot stand unchallenged.

1

¶30 ANN WALSH BRADLEY, J. *(concurring).* I join the majority opinion in its entirety, concluding that Johnson's motion for the entry of a qualified domestic relations order is not barred by the operation of Wis. Stat. § 893.40. I agree with the majority opinion when it states that it would be "absurd and unreasonable" to construe the statute of repose in a way that it would begin to run at the time the judgment in this case was entered. Majority op., ¶3.

¶31 Likewise, I agree with the majority when it states that there has been "a recognition on the part of this court" that:

> . . . in some respects ongoing obligations are a common feature of family law judgments, and whether observing the obligation to construe statutes to avoid absurd results or exercising their equitable powers, circuit courts, under Wis. Stat. § 767.01, in Ch. 767, Actions Affecting the Family, "have authority to do all acts and things necessary and proper in those actions and to carry their orders and judgments into execution as prescribed in this chapter."

Id., ¶23.[1]

¶32 However, I write separately to address the unnecessary uncertainty that Justice Ziegler's concurrence introduces into the law. By raising questions concerning the continued vitality of judgments that require the payment of maintenance or the continuation of life insurance with designated beneficiaries,

---

[1] Justice Ziegler asserts that this concurrence "incorrectly characterizes the conclusions reached in the majority opinion." Justice Ziegler's Concurrence, ¶1 n.1. Ultimately, it will be left to the reader to determine whether such an assertion is correct. This concurrence does not attempt to "characterize" the majority opinion but rather quotes directly from it.

1

Justice Ziegler's concurrence creates uncertainty in areas of family law not presented in this case.

¶33 In the concurring opinion, Justice Ziegler questions "whether or how Wis. Stat. § 893.40 may affect the enforcement of obligations which may necessarily extend beyond 20 years. . . ." Justice Ziegler's Concurrence, ¶2. She further appears to question whether judgments requiring "maintenance" or the payment of "life insurance proceeds" that may continue beyond or may first become due after 20 years post-judgment will remain enforceable after 20 years has passed. Id., ¶1 n.2.

¶34 Both the majority and the dissent provide a response to Justice Ziegler's concerns. The majority correctly recognizes that "[i]n family law matters especially, courts often encounter provisions in orders that create continuing obligations that may very well extend beyond 20 years." Majority op., ¶22.

¶35 The dissent responds by explaining that "[t]he suggestion that a party could simply stop paying alimony or maintenance after 20 years, as a result of Wis. Stat. § 893.40, is not reasonable or realistic because of the continuing nature of the obligation to pay." Dissent, ¶112 (emphasis in original); Ashby v. Ashby, 174 Wis. 549, 554, 183 N.W. 965 (1921) (determining that an order for alimony payments was a "continuing judgment, always subject to modification by the court during the life of the parties," and therefore a statute of limitations did not apply). I agree with the dissent's conclusion that a judgment that orders indefinite maintenance

2

payments is a continuing judgment that is not barred by the operation of Wis. Stat. § 893.40.

¶36 In response to the concern regarding the change of life insurance beneficiaries, the dissent explains that "the insured may not change the beneficiary more than 20 years after the entry of the judgment and expect that he or she has not created a new cause of action for the original beneficiary." Dissent, ¶111. Likewise I agree with the dissent's conclusion that the obligation to designate a specific beneficiary may be enforced beyond the 20-year period.

¶37 Accordingly, although I join the majority opinion in its entirety, I respectfully concur.

¶38 I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this concurrence.

¶39 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join the majority opinion because it does not conclude that a court has the equitable power to ignore a statute of repose and because it concludes that under the facts of this case Wis. Stat. § 893.40 does not apply because a qualified domestic relations order (QDRO) was not possible when this judgment was entered.[1] I concur to urge the legislature to consider whether legislative change could provide greater certainty to courts, litigants, and parties who may depend on the enforceability of certain family court matters beyond 20 years.[2]

¶40 The legislature has set a 20-year statute of repose in Wis. Stat. § 893.40, and in the case at issue, the circuit court concluded, as Justice Prosser would, that § 893.40 barred enforcement. The majority opinion reverses the circuit court but has cabined its analysis to "the circumstances present in this case" and the "dispositive fact" that the QDRO statute, Wis. Stat. § 40.08, "operated to prohibit pension interests from

---

[1] Justices Roggensack and Gableman join this concurrence because they also conclude that the majority opinion does not answer whether Wis. Stat. § 893.40 bars certain family court judgments that extend beyond 20 years, and it does not conclude that the circuit court has the equitable power to ignore a statute of repose. If, as Justice Bradley suggests, the majority opinion were to answer those questions, it would not have sufficient votes to constitute a majority opinion and would then be only a lead opinion. Therefore, Justice Bradley's concurrence incorrectly characterizes the conclusions reached in the majority opinion.

[2] The payment of retirement benefits, maintenance, or life insurance proceeds may be court ordered and thus necessarily extend beyond 20 years. While the majority somewhat addresses equitable estoppel, it does not state that equitable estoppel provides an enforcement mechanism. See majority op., ¶25.

1

being assigned at the time the judgment was entered." Majority op., ¶¶3, 19-23, 26. I join that holding. I write to clarify the fact that the majority opinion leaves unanswered the question of whether or how Wis. Stat. § 893.40 may affect the enforcement of obligations which may necessarily extend beyond 20 years.[3] See majority op., ¶¶3, 19-23, 26. Further proof that legislative action may provide greater clarity is evident by the thoughtful yet differing viewpoints and analyses of the circuit

---

[3] Justice Bradley's opinion incorrectly suggests that the majority has decided this issue. Instead, the majority's analysis is entirely dependent on the fact that a QDRO could not have transferred these assets at the time of the divorce judgment. The majority's conclusion does not hinge on the language of Wis. Stat. § 893.40. The majority holds that "[u]nder the circumstances present in this case where a statute precludes a provision in a judgment, the statute of repose cannot begin to run as to that provision until the legislature changes the law such that the provision can be carried out." See majority op., ¶¶3, 26. Absent the unique facts of this particular case, the majority would be required to determine whether § 893.40 otherwise bars enforcement. In fact, that issue was presented by the parties, addressed by the circuit court, and is again presented in the concurrences and the dissent.

2

court decision in this case, the arguments of counsel, and our own majority, concurring, and dissenting opinions.[4]

¶41 Unlike Justice Bradley, I would not go beyond the majority opinion to conclude that a court may simply invoke its equitable powers to override the language in a statute of repose. If the equitable power of the circuit courts can so supersede the limits of a statute of repose, such as Wis. Stat. § 893.40, based solely on the subjective determination of each judge who reviews such a question, then whether a court order is enforceable under the statute could be subject to an arbitrary

---

[4] Justice Bradley asserts that Justice Prosser's dissent supports her position, yet he concludes that the 20-year statute of repose is an absolute bar to this enforcement proceeding. Moreover, if Ashby v. Ashby, 174 Wis. 549, 183 N.W. 965 (1921), somehow unequivocally answers the question, then the majority decision would not need to undertake its extensive analysis. Instead, it could rely on that precedent and the equitable power of the circuit court. Ashby was decided well before Wis. Stat. § 893.40 was enacted, and arguably, Dewey v. Dewey, 188 Wis. 2d 271, 525 N.W.2d 85 (Ct. App. 1994), may call into question whether this is a continuing judgment. The dissent cites several cases in support of the proposition that circuit courts can equitably enforce certain family law judgments that may continue past 20 years. See dissent, ¶¶110-11. However, none of the plaintiffs in the cases cited by the dissent attempted to enforce a judgment more than 20 years after the entry of judgment, nor do any of the cases cite to or discuss the application of § 893.40.

determination of any one judge on any given day.[5] I cannot conclude that the rule of law supports such subjectivity. Apparently, the issue of when § 893.40 bars enforcement is subject to some debate.[6]

¶42 Courts, practitioners, and parties deserve greater certainty when it comes to important family law issues. It is the role of the legislature, not the courts, to enact statutes.

---

[5] Judicial decisions made without definable standards are arbitrary decisions that are disfavored under the law. See Donaldson v. Bd. of Comm'rs of Rock-Koshkonong Lake Dist., 2004 WI 67, ¶¶91-102, 272 Wis. 2d 146, 680 N.W.2d 762. I am at a loss as to why Chief Justice Abrahamson's concurrence disparages my concern over avoiding arbitrary decision-making, which should not be confused with a court's duty to engage in discretionary decision-making, as somehow being disrespectful of circuit court judges. C.J. Abrahamson's concurrence, ¶29. To the contrary, having been a trial lawyer and a circuit court judge, I understand that courts, lawyers, and litigants would typically prefer greater certainty when analyzing jugular issues, such as when a statute of repose acts as a bar to enforcement. Unfortunately, this opinion is limited to its facts and does not answer that issue.

[6] Legislative response to a court decision is not unusual. Hamilton v. Hamilton, 2003 WI 50, 261 Wis. 2d 458, 661 N.W.2d 832, is instructive as to the interplay between court decisions and subsequent legislative response. After Hamilton, the legislature initiated statutory changes to address the child support issues raised therein. It is not uncommon for this court to ask the legislature to consider legislative action. See, e.g., State v. Brereton, 2013 WI 17, ¶54 n.16, 345 Wis. 2d 563, 826 N.W.2d 369; id., ¶¶98-99 (Abrahamson, C.J., dissenting); State v. Sveum, 2010 WI 92, ¶¶79, 84, 328 Wis. 2d 369, 787 N.W.2d 317 (Ziegler, J., concurring) (asking legislature to set parameters and standards of use for the installation and monitoring of GPS tracking devices); id., ¶77 (Crooks, J., concurring); id., ¶126 (Abrahamson, C.J., dissenting); State v. McClaren, 2009 WI 69, ¶¶77-79, 318 Wis. 2d 739, 767 N.W.2d 550 (Bradley, J., dissenting); State ex rel. J.H. Findorff & Son, Inc., v. Circuit Court for Milwaukee Cnty., 2000 WI 30, ¶24 n.14, 233 Wis. 2d 428, 608 N.W.2d 679.

Perhaps legislative change is not needed, but perhaps it is. I merely request that the legislature evaluate the issue presented.

¶43 For the foregoing reasons I concur.

¶44 I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this concurrence.

¶45 DAVID T. PROSSER, J. *(dissenting).* Michael R. Masters and Patricia A. Johnson were married on October 18, 1986. They were divorced on July 20, 1989. Their divorce judgment, signed by Waukesha County Circuit Judge Robert Mawdsley, made the couple's written marital property agreement part of the judgment. The marital property agreement read in part: "V. Property Division——Pension. The Petitioner shall be awarded 1/2 of the value of the Respondent's Wisconsin Retirement System [WRS] benefits accrued from date of marriage thru the date of divorce. A QDRO [qualified domestic relations order] shall be submitted to secure these rights."

¶46 For more than 20 years, Patricia Johnson did not submit a QDRO to the WRS or to the court "to secure [her] rights" to a portion of her former husband's pension. Thus, when she attempted to file a QDRO in 2010, her effort was opposed by Masters and ultimately denied by the Waukesha County Circuit Court.[1]

¶47 The basis for the circuit court's denial was Wis. Stat. § 893.40, which provides:

> Action on judgment or decree; court of record. Except as provided in ss. 846.04(2) and (3) and 893.415, action upon a judgment or decree of a court of record of any state or of the United States shall be commenced within 20 years after the judgment or decree is entered or be barred.

¶48 The issue presented in this case is whether there is any reasonable basis for Johnson to avoid the apparent effect of this statute. I conclude that there is not.

---

[1] Kathryn W. Foster, Judge.

1

¶49 The majority takes the opposite view. It asserts that it would be an absurdity to apply the statute under the circumstances of this case. Justice Ziegler's concurrence raises the stakes even more and pleads with the legislature to change the law. Inasmuch as I believe the circuit court's decision was correct, the majority's analysis is flawed, and Justice Ziegler's concurrence is mistaken because the statute is reasonable, I respectfully dissent.

I

¶50 The facts and circumstances heavily influence the outcome of this case.

¶51 Congress approved the Employee Retirement Income Security Act of 1974 (ERISA) to protect the interests of participants in the growing number of employee benefit plans in the private sector throughout the United States. See 29 U.S.C. § 1001. Ten years later, Congress amended ERISA by enactment of the Retirement Equity Act of 1984. See Pub. L. No. 98-397, 98 Stat. 1426 (1984). The purpose of the Retirement Equity Act, which created the "qualified domestic relations order" in 29 U.S.C. § 1056(d), was to facilitate the orderly assignment or alienation of all or a portion of a person's employee benefit plan to an "alternate payee" as the result of a court order or judgment relating to child support, alimony, or marital property rights stemming from divorce. See S. Rep. No. 98-575, at 3, 18-21 (1984) reprinted in 1984 U.S.C.C.A.N. 2547, 2549, 2564-2567.

¶52 As the majority opinion notes, however, "ERISA does not apply to government retirement plans." Majority op., ¶6

2

(citing 29 U.S.C.A. § 1003(b)(1)); see also Lindsey v. Lindsey, 140 Wis. 2d 684, 690, 412 N.W.2d 132 (Ct. App. 1987). Consequently, a court's authority to assign or divide a government pension in Wisconsin was and is subject to Wisconsin statute.

¶53 On July 20, 1989——the date of the Johnson/Masters divorce——Wis. Stat. § 40.08 read in part:

> Benefit assignments and corrections. (1) Exemptions. The benefits payable to, or other rights and interests of any member, beneficiary or distributee of any estate under any of the benefit plans administered by the [Department of Employee Trust Funds (the department)], including insurance payments, shall be exempt from any tax levied by the state or any subdivision of the state and shall not be assignable, either in law or equity, or be subject to execution, levy, attachment, garnishment or other legal process except as specifically provided in this section. The exemption from taxation under this section shall not apply with respect to any tax on income.

Wis. Stat. § 40.08(1) (1987-88) (emphasis added). Compare id. with Wis. Stat. § 66.81 (1987-88) (prohibiting the taxation, execution, and assignment of pension benefits in the retirement system of first class cities).

¶54 However, the statute continued:

> (3) Waivers. Any participant, beneficiary or distributee of any estate may waive, absolutely and without right of reconsideration or recovery, the right to or the payment of all or any portion of any benefit payable or to become payable under this chapter. The waiver shall be effective on the first day of the 2nd month commencing after it is received by the department or on the date specified in the waiver if later.

Wis. Stat. § 40.08(3) (1987-88) (emphasis added).

3

¶55 The gist of these statutory provisions was clear. In July 1989 the benefits payable to a member of the WRS were not assignable in a divorce proceeding except as <u>specifically</u> provided in Wis. Stat. § 40.08. Section 40.08 did not authorize any "qualified domestic relations order." It did, however, permit a member to waive payment of a portion of his or her pension by filing an appropriate waiver with the department.

¶56 The legislature changed the law approximately nine months later. <u>See</u> 1989 Wis. Act 218. Newly created Wis. Stat. § 40.08(1m) provided that a participant's accumulated rights and benefits in the WRS shall be divided by "a qualified domestic relations order" but "only if the order provides for a division <u>as specified in this subsection</u>." Wis. Stat. § 40.08(1m) (1989– 90) (emphasis added). The specifications in § 40.08(1m), plus the new definition of "qualified domestic relations order" in Wis. Stat. § 40.02(48m), take up more than a full page of the 1989-90 statutes. Wisconsin Stat. § 40.08(1m)(j) pointedly stated: "This subsection applies to qualified domestic relations orders issued on or after April 28, 1990, that provide for divisions of the accumulated rights and benefits of participants whose marriages have been terminated by a court on or after April 28, 1990."

¶57 In short, the 1990 changes in the statutes did not apply to the Johnson/Masters divorce.

¶58 In 1998 the legislature amended the statutes again[2] to recognize qualified domestic relations orders issued on or after

---

[2] <u>See</u> 1997 Wis. Act 125.

4

January 1, 1982, Wis. Stat. § 40.08(1m)(j) (1997–98), and to permit the revision or modification of judgments entered on or after January 1, 1982, to provide for payments under a qualified domestic relations order. Wis. Stat. § 40.08(1m)(k)2. (1997–98). These changes permitted Johnson to take the step outlined in the marital property agreement to secure her rights.

¶59 The plain truth is that the property division-pension section of the Johnson/Masters marital property agreement was not valid on the date of the 1989 divorce because the law did not then permit a court to divide Michael Masters' WRS pension. If the law had not changed in 1998, the 1989 property division-pension section of the marital property agreement might never have been eligible to become valid, although it was <u>always</u> possible for Patricia Johnson to secure Masters' written waiver under Wis. Stat. § 40.08(3).

¶60 If the 1998 law had been in place on July 20, 1989, Johnson would still have been required by the marital property agreement, the judgment incorporating that agreement, and the applicable statutes to submit a QDRO to the department to secure her rights.

¶61 Johnson had 20 years to obtain a QDRO and submit it to the department or at least file it with the court. She did not do so, even though such a QDRO was specifically authorized by law in her situation from May 2, 1998, through July 20, 2009——that is, for more than 11 years——and even though she signed a <u>draft</u> QDRO after the divorce. There is no evidence that Johnson sought a court order or contempt to force Masters to comply with

5

the marital property agreement by signing the draft QDRO or a revised QDRO.

¶62 Johnson also had 20 years to obtain a written waiver from Masters, either voluntarily or through court action. She did not do so, even though the Waukesha County Circuit Court held post-divorce hearings in the Johnson/Masters case in 1995 and 1996 and issued orders in the case in 1995, 1996, and 2004.

¶63 In addition, Johnson had almost nine years to seek to amend the judgment to obtain the cash equivalent of her pension share in lieu of a QDRO, during the period when a QDRO was not authorized by statute in her case. After that time, she could have pursued multiple options, including an effort to secure the cash equivalent.

¶64 Johnson's interest in a portion of Masters' pension was always contingent upon her taking steps to secure and enforce her rights. She did not do so until more than 20 years after the divorce judgment.

¶65 In pointing the finger at Johnson for failing to take the required action to protect her rights, one is actually pointing at her divorce counsel.[3] There is no allegation by Johnson that Masters' divorce counsel failed to do something that he committed to do. This case, then, reveals more than 20 years of unexplained inaction and neglect. It is hardly an "absurdity" for a court to take that inaction into account.

---

[3] See Scott L. Dennison, Valuing Retirement Benefits in Divorce, Wis. Lawyer, June 2012, at 10-11 ("Lawyers who work on divorces that involve QDROs have been magnets for malpractice suits, because a poorly designed QDRO can be a real disaster.").

II

¶66 Johnson's inaction over a 20-year period is significant because of Wis. Stat. § 893.40, the 20-year statute of repose. The statute provides, in part, that "action upon a judgment or decree of a court of record of any state or of the United States shall be commenced within 20 years after the judgment or decree is entered <u>or be barred</u>." Wis. Stat. § 893.40 (emphasis added).

¶67 The history and purpose of Wis. Stat. § 893.40 deserve discussion. The court also should discuss Johnson's attempt to get around the statute by arguing that her effort to secure a QDRO was not "an action upon a judgment."

¶68 Wisconsin Stat. § 893.40 became law in 1980. <u>See</u> 1979 Wis. Act 323. It combined and modified the provisions of two repealed statutes, Wis. Stat. §§ 893.16(1) and 893.18(1). The former statute had provided a 20-year statute of limitations: "Within 20 years. Within 20 years: (1) An action upon a judgment or decree of any court of record of this state or of the United States sitting within this state." Wis. Stat. § 893.16(1) (1977-78).

¶69 The latter statute had only a 10-year statute of limitations: "Within 10 years. Within 10 years: (1) An action upon a judgment or decree of any court of record of any other state or territory of the United States or of any court of the United States sitting without this state." Wis. Stat. § 893.18(1) (1977-78).

7

¶70 The new Wis. Stat. § 893.40 established a uniform 20-year time limit for an "action upon a judgment or decree" and specified that the 20 years began to run when the "judgment or decree is entered."  It added that a failure to timely commence action would "bar[]" future action upon a judgment.  These changes transformed two statutes of limitation into a single statute of repose.

¶71 "A statute of repose . . . limits the time period within which an action may be brought based on the date of an act or omission."  Hamilton v. Hamilton, 2003 WI 50, ¶29, 261 Wis. 2d 458, 661 N.W.2d 832.  The "act" that triggers the statute of repose in Wis. Stat. § 893.40 is the entry of a judgment.  See generally, Daniel J. La Fave, Remedying the Confusion Between Statutes of Limitation and Statutes of Repose in Wisconsin——A Conceptual Guide, 88 Marq. L. Rev. 927 (2005).

¶72 Limitation periods in statutes of limitation and statutes of repose are "legislative pronouncements of policy barring actions for various policy reasons regardless of the merit of the action."  Hamilton, 261 Wis. 2d 458, ¶42 (citations omitted).  These statutes are meant to "ensure prompt litigation of claims and to protect defendants from fraudulent or stale claims brought after memories have faded or evidence has been lost."  Korkow v. Gen. Cas. Co. of Wis., 117 Wis. 2d 187, 198, 344 N.W.2d 108 (1984).  As this court explained in Aicher:

> Statutes of limitation and statutes of repose represent legislative policy decisions that dictate when the courthouse doors close for particular litigants. . . .  [These statutes] "are found and approved in all systems of enlightened jurisprudence,"

8

[and] articulate the principle that it is more just to put the adversary on notice to defend a claim within a specified period of time than to permit unlimited prosecution of stale claims.

Aicher v. Wis. Patients Comp. Fund, 2000 WI 98, ¶27, 237 Wis. 2d 99, 613 N.W.2d 849 (quoting United States v. Kubrick, 444 U.S. 111, 117 (1979)).

¶73 Wisconsin Stat. § 893.40 has no exception for family law cases except for actions to collect child support payments. See Wis. Stat. § 893.415. This specific exception was created following the court's decision in Hamilton, which discussed § 893.40 extensively.[4]

¶74 The court in Hamilton said Wis. Stat. § 893.40 was "plain and unambiguous" as to the act that begins the 20-year period. Hamilton, 261 Wis. 2d 458, ¶30. This means that the statute is not triggered by the subsequent "accrual" of a right, as the majority mistakenly suggests. Thus, Hamilton's interpretation of § 893.40 should decide this case unless Johnson's effort to secure a QDRO in 2010 was not an "action upon a judgment."

¶75 This possibility is raised in the certification from the court of appeals and argued by Johnson in this review.

¶76 The argument is grounded in the text of Wis. Stat. § 893.02:

> Except as provided in s. 893.415(3), an action is commenced, within the meaning of any provision of law which limits the time for the commencement of an action, as to each defendant, when the summons naming

---

[4] Wisconsin Stat. § 893.415(1) defines "action" as "any proceeding brought before a court" to collect child or family support.

9

the defendant and the complaint are filed with the court, but no action shall be deemed commenced as to any defendant upon whom service of authenticated copies of the summons and complaint has not been made within 90 days after filing.

Wis. Stat. § 893.02 (emphasis added).

¶77 The certification states that an "argument could be made that an 'action' is a proceeding which is begun by a summons and complaint and that an action upon a judgment or decree of a court of record therefore means any judgment that was commenced by a summons and complaint." The certification added that this was part of the rationale used in Lueck v. Lueck, No. 2011AP1195, unpublished slip op. (Wis. Ct. App. Oct. 12, 2011), review denied (Mar. 2, 2012), where the court of appeals said Wis. Stat. § 893.40 did not pertain to actions begun by a motion and order to show cause because motions and orders to show cause "are not a summons and complaint." Id., ¶9.

¶78 The argument that Johnson's effort to secure a QDRO in 2010 was not an action upon a judgment must be addressed.

¶79 Wisconsin Stat. §§ 893.02 and 893.40 both have their origins in early Wisconsin law. Revised Wisconsin Stat. Chapter 138, § 15 (1858), provided: "Within twenty years:——1. An action upon a judgment or decree of any court of record of this state."

¶80 Section 27 of the same chapter then provided, in part, that "[a]n action shall be deemed commenced as to each defendant, when the summons is served on him, or on a co-defendant, who is a joint contractor or otherwise united in

10

interest with him." Wis. Stat. ch. 138, § 27 (1858) (emphasis added).

¶81 These two statutes were accompanied by two other provisions of note. Section 2 of Chapter 122 of the 1858 Revised Statutes provided that, "[a]n action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the prevention of a public offense." Wis. Stat. ch. 122, § 2 (1858).

¶82 Section 10 of Chapter 122 provided:

> No action shall be brought upon a judgment rendered in any court of this state, except a court of the justice of the peace, between the same parties, without leave of the court, for a good cause shown, on notice to the adverse party; and no action on a judgment rendered by a justice of the peace shall be brought in the same county within two years after its rendition, except in cases of his death, resignation, incapacity to act, or removal from the county, or that the process was not personally served on the defendant, or on all the defendants, or in case of the death of some of the parties, or when the docket or record of such judgment is or shall have been lost or destroyed.

Wis. Stat. ch. 122, § 10 (1858) (emphasis added).

¶83 These statutes suggest that "action" was an "ordinary proceeding," as opposed to a special proceeding, and that sometimes this "action" required a "summons" and sometimes it required "notice to the adverse party."

¶84 The essence of Wis. Stat. § 893.40 appears again in chapter 177, section 4220 of the 1878 Revised Statutes: "Within twenty years: 1. An action upon a judgment or decree of any

11

court of record of this state, or of the United States, sitting within this state."

¶85 The forerunner of present Wis. Stat. § 893.02 (regarding summons and complaint) was found in Chapter 177, Section 4239 of the 1878 Revised Statutes:

> An action shall be deemed commenced, <u>within the meaning of any provision of law which limits the time for the commencement of an action</u>, as to each defendant, when the summons is served on him, or on a codefendant who is a joint contractor or otherwise united in interest with him.

Wis. Stat. ch. 177, § 4239 (1878) (emphasis added).

¶86 The 1878 Revised Statutes also maintained the definition of "action" in the new Section 2595 of Chapter 118 but eliminated the second reference to "action upon a judgment" that had appeared in Chapter 122, Section 10 of the 1858 Revised Statutes.

¶87 By 1925 the language in Section 4220 of the 1878 Revised Statutes appeared without change (except for punctuation) in Wis. Stat. § 330.16 (1925).[5] The language of Section 4239 of the 1878 Revised Statutes appeared in Wis. Stat. § 330.39 (1925). The definition of "action" from 1878 continued in Wis. Stat. § 260.03 (1925).

¶88 Sections 330.16 and 330.18 were renumbered as §§ 893.16 and 893.18 in § 2, ch. 66, Laws of 1965. Wisconsin Stat. § 330.39 was renumbered § 893.39 in the same chapter.

---

[5] The 10-year statute of limitations for "action upon a judgment . . . of any court of record of any other state" appeared in Wis. Stat. § 330.18(1) (1925).

¶89 In 1975 the supreme court adopted the Wisconsin Rules of Civil Procedure, effective January 1, 1976. See 67 Wis. 2d 585, 585-784 (1975). Wisconsin Stat. § 893.39 was amended "to conform to the proposed mode of commencement of action under s. 801.02(1)." Id. at 770-71. It read:

> Action, when commenced. An action shall be deemed commenced, within the meaning of any provision of law which limits the time for the commencement of an action, as to each defendant, when the summons naming him as defendant and the complaint are filed with the court, but no action shall be deemed commenced as to any defendant upon whom service of authenticated copies of the summons and complaint has not been made within 60 days after filing.

Id. at 770-71 (emphasis added).

¶90 This amended section was repealed and recreated as Wis. Stat. § 893.02 by Section 28, Chapter 323, Laws of 1979, the chapter that repealed and recreated all of Wis. Stat. Chapter 893. Chapter 323 is the same chapter that created Wis. Stat. § 893.40, the statute of repose at issue in this case.

¶91 In sum, Johnson's argument depends in large part on whether the supreme court redefined "action upon a judgment" when it added "complaint" to Wis. Stat. § 893.39 in 1975.

¶92 There are several cases prior to the 1975 change that suggest "action upon a judgment" was broadly construed to include "actions" beyond the filing of a new lawsuit.

¶93 In Coon v. Seymour, 71 Wis. 340, 345-46, 37 N.W. 243 (1888), the court explained "action upon a judgment." The court said:

> We do not understand this [case] to be an action upon a judgment which may be brought within twenty years after the cause of action accrued, within the meaning

13

of sec. 4220, R.S.  <u>Such an action is to confirm and enforce a judgment.  This, on the contrary, is an action to avoid and set aside a judgment for alleged causes existing outside of the record.</u>

<u>Id.</u> (emphasis added).  An action to "confirm and enforce a judgment" is not a new lawsuit.

¶94  In <u>Brown v. Hopkins</u>, 101 Wis. 498, 77 N.W. 899 (1899), the court discussed a judgment of foreclosure entered on December 10, 1877, and an execution issued upon that judgment on December 3, 1897, and a subsequent levy on real estate, both within the 20-year statute of limitations.  The court said:

> The question is whether an execution which is duly issued and partially executed by levying upon property within twenty years from the entry of a judgment expires at the end of the twenty-year period, or whether it remains valid and effective, so that the property so levied upon may be thereafter sold and applied to satisfy the command of the writ.  Our statute provides (R.S. 1878, sec. 4220) that a judgment of a court of record outlaws at the end of twenty years from the date of its rendition; and, further (R.S. 1878, sec. 2968), that "in no case shall an execution be issued, <u>or any proceedings had on any judgment</u>, after twenty years from the time of the rendition thereof."  It is very evident from this latter section that a valid execution may be issued at any time up to the last day of the twenty years; and the question is whether, when so issued, it is rendered void by the limitation upon the judgment.  Our statute requires no order of confirmation of the sheriff's sale, nor any other proceeding by the court, to perfect the purchaser's title.  No further <u>proceedings upon the judgment</u> are contemplated or required by the statute.  The sale of the property by the sheriff, and the payment or application of the proceeds, are simply the carrying out of the commands of his writ, which, when issued, was perfectly valid.

<u>Brown</u>, 101 Wis. at 499-500.

14

¶95 The Brown case shows that "execution" upon a judgment was required within the 20-year period. "Execution" was not a new lawsuit.

¶96 In Zellmer v. Sharlein, 1 Wis. 2d 46, 82 N.W.2d 891 (1957), a daughter filed a claim against her late father's estate. When the daughter's mother and father were divorced, the divorce judgment had incorporated a stipulation that required the father to pay the premiums on an insurance policy on his life for the benefit of the daughter. Id. at 47. The father failed to pay the premiums. Id. at 48. As a result, when the father died and left nothing for the daughter (on grounds that he had provided for her by the life insurance policy), she filed and litigated a claim against his estate. Id. The court rejected a defense that the claim was barred by a six-year statute of limitations for breach of contract. Id. at 52. It concluded that the claim was within the 20-year statute of limitations for a claim upon a judgment, namely, the divorce judgment. Id. The claim did not constitute a new lawsuit.

¶97 In Schafer v. Wegner, 78 Wis. 2d 127, 254 N.W.2d 193 (1977), the plaintiff commenced an action to recover personal property awarded to her in a divorce judgment in 1957. The suit was commenced in 1973, within the 20 years set out in Wis. Stat. § 893.16(1) (1971-72). Id. at 130-31. The court observed that, "[t]he household furniture was awarded to the appellant in the divorce decree and the statute of limitations concerning actions based on that award is twenty years." Id. at 132. Although the plaintiff's suit was timely filed under the statute, this court

15

dismissed it on grounds of laches. Id. There is no evidence in the opinion that the court would have viewed a "motion" different from a new suit under the statute of limitations. Rather, the court cut off the plaintiff after a shorter time period.

¶98 Coon, Brown, Zellmer, and Schafer suggest that courts have viewed "action upon a judgment" broadly, not restricting an "action" to a proceeding that required a summons and complaint. The question here is whether that view changed in 1975 when the court modified the language in Wis. Stat. § 893.39 (1973-74).

¶99 There are at least four reasons why this court should not adopt any theory that Wis. Stat. § 893.40's time limitation applies to only proceedings commenced by a summons and complaint.

¶100 First, this theory depends upon a conclusion that this court contravened its rulemaking authority when it amended Wis. Stat. § 893.39 in 1975.

¶101 In 1975 Wis. Stat. § 251.18, the predecessor to present Wis. Stat. § 751.12, contained the same critical language found in present law, namely, with respect to court-made rules of pleading, practice, and procedure, "Such rules shall not abridge, enlarge or modify the substantive rights of any litigant." If the court's 1975 amendment to Wis. Stat. § 893.39 (1973-74) narrowed the statute of limitations so that it applied to only proceedings initiated by summons and complaint——thereby removing the limitation on motions, orders to show cause, claims, executions, and the like——the court would

16

have violated § 251.18 because it clearly would have abridged, enlarged, or modified the substantive rights of persons affected by judgments.

¶102 "In Wisconsin, unlike many states, the running of the statute of limitations extinguishes the right as well as the remedy; if the statute has run, the cause of action no longer exists." Schafer, 78 Wis. 2d at 134. "The limitation of actions is a right as well as a remedy, extinguishing the right on one side and creating a right on the other, which is as of high dignity as regards judicial remedies as any other right and it is a right which enjoys constitutional protection." Maryland Cas. Co. v. Beleznay, 245 Wis. 390, 393, 14 N.W.2d 177 (1944) (citations omitted).

¶103 Second, an interpretation that Wis. Stat. § 893.40 is inapplicable to motions, orders to show cause, and other proceedings not requiring a "complaint" would mean, in effect, that there would be no time period for a party to bring certain kinds of actions upon a judgment. This would effectively remove the limitation, creating tremendous uncertainty, because it would be replaced with the far-less-certain doctrine of laches. See Schafer, 78 Wis. 2d at 132.

¶104 It is hard to imagine that this court would purposely gut a longstanding statute of limitations at the very time it was speaking of the constitutional significance of such statutes in court decisions.

¶105 Third, an interpretation that Wis. Stat. § 893.40 is inapplicable to motions, orders to show cause, and other

17

proceedings not requiring a complaint could have serious adverse consequences outside family law. Masters argues that the principle stated in the Lueck decision would leave many post-judgment collection actions without any time limitation to commencement. He points to earnings garnishments and executions as examples. In the absence of a specific statute limiting a particular enforcement mechanism upon a judgment, this concern is well founded.

¶106 Fourth, the legislature concluded that Wis. Stat. § 893.40 applied to a broad array of "proceedings" when it created Wis. Stat. § 893.415 after the Hamilton decision. Subsection (1) defines "action" in the section to mean "any proceeding brought before a court, whether commenced by a petition, motion, order to show cause, or other pleading." This broad definition would be superfluous if § 893.40 were inapplicable to anything other than a proceeding commenced with a summons and complaint.

¶107 There are various ways to interpret Wis. Stat. §§ 893.40 and 893.02. The latter section provides a surefire way of acting "upon a judgment" before a statute of limitations or a statute of repose has run. See Lak v. Richardson-Merrell, Inc., 100 Wis. 2d 641, 649, 302 N.W.2d 483 (1981). Whether the wording of § 893.02 was expected or intended to curtail what an "action" was is much more speculative. The enactment of § 893.40, on the other hand, signified a clear objective: a statute of repose eliminated issues about accrual because the statute begins to run at a definite time, based on an event, not

18

an indefinite time based upon the accrual of a right. The majority opinion has the effect of disregarding the legislature's clearly stated objective.

III

¶108 Justice Ziegler's concurrence presents a different problem. Justice Ziegler writes that some family court judgments and orders may necessitate jurisdiction for longer than 20 years, such as the payment of retirement benefits, maintenance issues, or life insurance proceeds. In my view, courts will employ reason and common sense in dealing with questions about the enforcement of judgments.

¶109 For instance, some judgments, like the Johnson/Masters divorce judgment, require some additional step or steps to secure a right. Filing a QDRO protects the rights of the "alternate payee" with respect to both public and private retirement benefits. Enforcing a properly filed QDRO is not barred by Wis. Stat. § 893.40.

¶110 Other judgments are not only final but also complete, in the sense that no additional steps are required by a party seeking to enforce a right. These in essence are continuing judgments.

¶111 For instance, a judgment that requires an insured to pay premiums and designate a specific beneficiary needs no additional action by the beneficiary. The beneficiary has a property right and may enforce that right against the insured or the insured's estate when the insured violates that right. See Richards v. Richards, 58 Wis. 2d 290, 298-99, 206 N.W.2d 134

19

(1973). In other words, the insured may not change the beneficiary more than 20 years after the entry of the judgment and expect that he or she has not created a new cause of action for the original beneficiary. Glassner v. DOR, 115 Wis. 2d 168, 181, 340 N.W.2d 223 (Ct. App. 1983).

¶112 As another example, in Ashby v. Ashby, 174 Wis. 549, 183 N.W. 965 (1921), this court said that alimony was a "continuing judgment, always subject to modification by the court during the life of the parties," and thus a statute of limitations did not apply. Ashby, 174 Wis. at 554.[6] The suggestion that a party could simply stop paying alimony or maintenance after 20 years, as a result of Wis. Stat. § 893.40, is not reasonable or realistic because of the continuing nature of the obligation to pay. Cf. Rintelman v. Rintelman, 118 Wis. 2d 587, 348 N.W.2d 498 (1984); Estate of Barnes, 170 Wis. 2d 1, 12-13, 486 N.W.2d 575 (Ct. App. 1992).

¶113 A party can protect its interests in a judgment by timely action and by careful wording of the judgment. Wisconsin Stat. § 893.40 is designed to discourage people from sleeping on their rights. The statute is not likely to be used against people who are wide awake and conscious of the need to assert their interests.

¶114 For the foregoing reasons, I respectfully dissent.

---

[6] However, because Mrs. Ashby waited so long to seek back payments for alimony, she could not get everything that her ex-husband owed her. Ashby v. Ashby, 174 Wis. 549, 555-56, 183 N.W. 965 (1921). Fully enforcing the judgment after 44 years was not fair to the ex-husband, since he no longer had any way to earn money. Id.

20